Ronald F. **SAMS**, Appellant,

v.

Laura Rae **SAMS**, Appellee.

Superior Court of Pennsylvania.

Argued March 13, 2002.
Filed Sept. 20, 2002.

Kenneth Horoho, Pittsburgh, for appellant.

Mark B. Greenblatt, Pittsburgh, for appellee.

Before: HUDOCK, TODD, and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 Appellant, Ronald F. Sams ("Father"), asks us to determine whether the court erred when it (1) dismissed his exceptions to the recommendations of the hearing officer regarding Father's petition to enforce an alleged settlement agreement on child support, and for credit on child support arrearages pursuant to that agreement, and (2) made the temporary order dated June 21, 2000, a final order and decree of the court. We hold that the court properly refused to enforce the alleged child support agreement, as the alleged agreement failed on grounds of public policy, lack of adequate consideration, and contractual injustice. Accordingly, we affirm the court's decision to deny Father's petition for specific performance.

¶ 2 The relevant facts and procedural history of this case are as follows. Father and Appellee, Laura Rae Sams ("Mother") were married in 1983, separated in March 1994, and divorced on August 29, 1996. They are the natural parents of four minor children. Father attended the University of Pittsburgh from 1979 to 1983 on a football scholarship, but did not earn a degree. He was drafted by the NFL (Packers) and played in the NFL for three years, until an injury in the 1986 season ended his professional football career. Father was not entitled to a pension.

¶ 3 Divorce and support proceedings were initiated in September 1994 by Father and Mother respectively. All proceedings for custody, support and dissolution were then consolidated. The docket reveals numerous filings on behalf of both parties through the conclusion of 1994. The year 1995 was no different. The docket reflects monthly court activity. On March 28, 1995, after a complex support hearing, Father was determined to have a net monthly income of $5900.00/month, and Mother was found to have zero income and

earning capacity, as she was the custodial parent of the four minor children, one of whom is developmentally challenged. On April 3, 1995, a modified court order was entered, directing Father to pay $3400.00/ month support for Mother and the four children, plus $200.00/month on the arrears (set at $22,144.55).

¶ 4 At the time of the 1995 support order, Father owned and operated a construction company. Father did not comply with the support order and ceased all payments in May 1996. His business closed as a result of a loss of contracts. Father tried to reopen under a different name, but could not make a go of it. The new operation closed in 1997. Father became a telemarketing solicitor in the summer of 1997, but lost his job in September 1997 due to a disagreement with the owner of the company. Father obtained a new position in November 1997, but lost his job in September 1998 due to disagreements regarding his performance. Father almost immediately became employed as a sales representative with Telephone USA, and is currently (as of March 27, 2001) employed as an operations manager with Telephone USA in Alpharetta, GA.

¶ 5 On February 24, 1997, Mother filed a petition for civil contempt, based upon Father's failure to comply with the 1995 support order. A hearing was scheduled for April 14, 1997. At that time, Mother and the children were completely dependent on Father for support.

¶ 6 While waiting for the contempt hearing to commence, the parties purportedly negotiated an agreement whereby, in exchange for $73,878.27 held in escrow, as a result of the sale of the marital home, Mother agreed to reduce the amount of Father's support arrearages to $15,000.00, waive her claim for alimony and counsel fees, and reduce Father's monthly support obligation to $1,000.00/month. The parties drafted a proposed agreement, which was signed by the parties and their respective counsel. Later, the parties learned that the Department of Public Welfare ("DPW") was also owed arrearages, as Mother had previously been receiving welfare benefits due to Father's noncompliance with the 1995 support order. The parties could not agree who would pay the DPW arrearages. There were also unresolved issues regarding unreimbursed medical expenses. Thus, the contempt hearing was continued by consent of the parties until July 28, 1997. On May 23, 1997, Mother's attorney at the time requested release of the escrowed funds to Mother. In support of his request, counsel included a copy of the alleged agreement. The escrowed funds were thereafter disbursed to Mother.

¶ 7 On July 28, 1997, the hearing officer again continued the contempt hearing, but set Father's arrearages at $105,819.95 in favor of Mother and at $5429.50 in favor of DPW. Father did not ask for review of this determination and did not supply the court with the April 14th agreement upon which he now relies. The contempt hearing was again continued in September 1997. An attachment of wages dated August 27, 1997 was entered on September 2, 1997, to deduct $1900.00 semi-monthly from Father's wages. After several more continuances on the contempt petition, a bench warrant was issued for Father and the case was continued generally. In October 1998, the wage attachment was increased to $2225.00 semi-monthly.

¶ 8 On December 28, 1999, the court found Father in civil contempt and sentenced him to be confined for a period of up to six months until partially purged through the payment of $39,871.00. Father was also found in criminal contempt and sentenced to time served. On December 29, 1999, the court issued an order

releasing to Mother monies paid on behalf of Father in the sum of $39,871.00. Father was subsequently credited with that amount. A compliance review was scheduled in 120 days. Father was also ordered to pay at least $2000.00/month. The docket states that this order was not intended to modify the underlying 1995 order for support. As a result, on January 19, 2000, a new wage attachment was entered against Father in the amount of $3600.00/month.

¶ 9 On February 15, 2000, Father filed a petition to enforce the settlement agreement of April 14, 1997 and credit the case accordingly. A conference on the petition was scheduled for June 21, 2000. The hearing officer found that the agreement was not a final, enforceable agreement for several reasons, including but not limited to the fact that the April 14th contempt hearing had not been cancelled but was continued until July 1997; a proposed order was not presented to the court for approval or signature; no agreement as to DPW arrearages had been reached; the agreement was not placed on PRIME (the court's computer system); and, Father did not pay in accordance with that agreement. Father's arrearages were then set at $96,697.68 in favor of Mother and children, and DPW arrearages were set at $4040.50. The hearing officer's recommendations also included a dollar for dollar credit or setoff of the $73,878.27 already paid to Mother from the escrow account on May 23, 1997, and the $6373.00 Father proved he had paid directly to Mother.

¶ 10 Father filed exceptions to these recommendations, alleging that Mother had ratified the 1997 agreement by acting on it to acquire the $73,878.27 from the escrow account in May 1997. Mother opposed Father's exceptions principally on the grounds that Father's actions subsequent to the April 1997 purported settlement and his testimony at the hearing on June 21, 2000, made clear that the agreement was not finalized. By order dated December 28, 2000, the court denied and dismissed Father's exceptions, and made the temporary order of June 21, 2000 a final order of the court, to be treated as a final decree.

¶ 11 Meanwhile, on November 22, 2000, Father had filed a request for continuance and for modification of the June 21, 2000 support order. This request for modification was scheduled for a hearing to be held on January 19, 2001. It was continued to March 30, 2001. During that time, Father filed an appeal from the December 28, 2000 order now under review. Father also filed his court-ordered concise statement of matters complained of on appeal, raising the issues he now pursues.

¶ 12 Father raises two issues for our review:

DID THE TRIAL COURT ABUSE ITS DISCRETION OR MAKE AN ERROR OF LAW IN DENYING APPELLANT'S/FATHER'S PETITION TO ENFORCE SETTLEMENT AGREEMENT AND CREDIT CASE?

DID THE TRIAL COURT ABUSE ITS DISCRETION OR MAKE AN ERROR OF LAW IN DETERMINING THAT NO SETTLEMENT AGREEMENT WAS ENTERED INTO BY APPELLANT/FATHER AND APPELLEE/MOTHER?

(Father's Brief at 4).

¶ 13 Contract principles apply to the interpretation of post-nuptial agreements. *Laudig v. Laudig*, 425 Pa.Super. 228, 624 A.2d 651, 653 (1993). In determining whether the trial court properly applied contract principles, the reviewing Court must decide, based on all the evidence, whether the trial court committed an error of law or an abuse of discretion. *Id.* "We do not usurp the trial court's fact-finding function." *Id.*

¶ 14 For ease of disposition we address Father's issues together. Father argues that the purported agreement of April 1997 is a valid and enforceable contract between the parties, properly entered into by both Father and Mother, and supported by adequate consideration, namely the funds in the escrow account. Father also argues that Mother must be equitably estopped from abrogating the terms of the 1997 document because she ratified the agreement when she sought and obtained the escrowed funds on the basis of the document, and she did not pursue any further claims for equitable distribution, alimony or counsel fees, in accordance with the terms of the 1997 agreement. Father also asserts that his failure to challenge the arrearages set at the July and August 1997 hearings does not constitute *res judicata* on the matter, because arrearages were not mentioned in Father's presence at either hearing. Father is vague on what was the primary issue at the July and August 1997 hearings, if not support and arrearages. Nevertheless, Father concludes that the April 1997 agreement should be enforced. We disagree.

¶ 15 Pennsylvania law permits support orders and private agreements for support to coexist and be enforced separately. *Nicholson v. Combs*, 550 Pa. 23, 703 A.2d 407 (1997). Private support agreements are subject to contract principles and enforceable in an action at law for damages or in equity for specific performance. *Id.* "Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." *McMahon v. McMahon*, 417 Pa.Super. 592, 612 A.2d 1360, 1363 (1992), *affirmed*, 547 Pa. 124, 688 A.2d 1179 (1997).

Contracts between husband and wife, if **fairly made**, are generally considered binding as to them, although legally ineffective to oust the jurisdiction of the court in a support action.... A mother cannot, by contract, bargain away the right of her minor [children] to adequate support from the father, regardless of the validity of the agreement as between the parents themselves.... In each case it is for the court to determine whether or not the terms of the agreement are reasonable, made without fraud or coercion, and have been carried out in good faith.

*Miesen v. Frank*, 361 Pa.Super. 204, 522 A.2d 85, 87 (1987) (emphasis added) (citations omitted). *See also Nicholson, supra; Kesler v. Weniger*, 744 A.2d 794 (Pa.Super.2000) (stating child's right to support cannot be bargained away by either parent and any release or compromise is invalid to extent it prejudices child's welfare).

¶ 16 Moreover, we note:

Where a legal obligation exists, a cumulative promise to perform it, unless upon a new consideration, is a nullity. Such promise adds nothing to and takes nothing from the original obligation.... A promise cannot be conditioned on a promise to do a thing to which a party is already legally bound. A promise to do what the promisor is already bound to do cannot be a consideration, for if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal.

*In re Com. Trust Co. of Pittsburgh*, 357 Pa. 349, 354, 54 A.2d 649, 651 (1947) (citations omitted). Further, "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Wagner v. Estate of Rummel*, 391 Pa.Super. 555, 571 A.2d 1055, 1059 (1990), *appeal denied*, 527 Pa. 588, 588 A.2d 510 (1991). The court is not free to ignore issues of fairness and

contractual injustice when examining a claim for specific performance. *Id.* However,

> Ratification results if a party who executed a contract under duress accepts the benefits flowing from it, or remains silent, or acquiesces in the contract for any considerable length of time after the party has the opportunity to annul or avoid the contract.

*National Auto Brokers Corp. v. Aleeda Development Corp.*, 243 Pa.Super. 101, 364 A.2d 470, 476 (1976) (citation omitted).

¶ 17 In the instant case, the trial court addressed Father's issues as follows:

> In my memorandum of December 28, 2000, I made specific findings and explained my reasoning for dismissing [F]ather's exceptions. Specifically, my memorandum provided that:
>
> 1) The hearing officer's determination that no agreement existed between the parties is supported by the record in this case as well as [F]ather's conduct in subsequent hearings;
>
> 2) Subsequent orders entered after April 14, 1997 which established arrearages and were not appealed by [Father], thus these order are *re judicata* on the amount of arrearages owed;
>
> 3) Any agreement to reduce or eliminate child support arrearages in this case would be unenforceable and against public policy.
>
> \*   \*   \*   \*   \*   \*
>
> With respect to the public policy issue, I found that, under the circumstance[s] of this case, it would be inappropriate to uphold this alleged agreement. In essence, [Mother] was waiving significant money due to her for her children in exchange for nothing. What she desperately needed at the time she entered into the alleged agreement was some money [because] [Father] had been paying nothing.[2]
>
> [2] Frequently, when an escrow account is available and a support arrearage is due, upon motion, I enter an order releasing the fund to the obligee but preserving any claims that the obligor should be [credited] with this amount at equitable distribution.

(Trial Court Opinion, file June 28, 2001, at 3–4).

¶ 18 In addition, we recognize that Father owed Mother over $100,000.00 in support and arrearages, by the time of the alleged agreement in 1997. The amount in escrow from the sale of marital home was only $73,878.27. Father agreed to surrender the escrowed funds in return for Mother's substantial concessions.[1] Father did not however suffer any detriment, as he did not do anything that he was not previously bound to do. Therefore, under the circumstances of this case, Father's release of the escrowed funds cannot serve as adequate consideration for the 1997 agreement. *See In re Com. Trust Co. of Pittsburgh, supra.* Thus, the 1997 agreement fails for lack of consideration, because Father was already obligated to pay Mother support in excess of the escrowed funds and Father was given a dollar-for-dollar credit against his accumulated arrearages for all of the funds Mother received from that account.[2] *See id.* at 651.

---

1. Mother's concessions included reducing Father's monthly support obligation from $3,400.00 to $1,000.00; reducing Father's arrearages to $15,000.00; waiving any claim for alimony; and waiving any claim for counsel fees.

2. As the trial court indicates, "because the escrow account was created by the sale of

¶ 19 Even if the 1997 agreement had been supported by adequate consideration, the agreement would still be invalid on public policy grounds, because Mother had no power to bargain away her children's right to support by reducing Father's obligation from $3,400.00/month support to $1,000.00/month. *See Kesler, supra.* Mother has primary custody of the parties' four children and a substantial part of the $3,400.00/month was intended for support of the children. Therefore, the alleged agreement is not valid on this ground as well.

¶ 20 Moreover, Father was not paying Mother the monthly amount he was obligated to pay. Having custody of the four children and zero income, Mother was in desperate need of money. Therefore, Mother was left with no meaningful choice when Father offered to release the escrowed funds in return for a reduction in his past and future support payments. She could take the escrowed funds and receive something, or refuse to take the escrowed funds and receive nothing. The terms of the agreement were unreasonably favorable to Father who stood to gain a substantial reduction in his obligation to Mother in return for which Mother received nothing more than that to which she had been previously entitled. *See Miesen, supra.* Because Mother had no meaningful choice and the agreement was unreasonably favorable to Father, the agreement is unenforceable as unconscionable. *See Wagner, supra.*

¶ 21 Further, at the time of the alleged agreement Mother did not have an immediate alternative remedy. Father had already been ordered to pay support in a specific amount, which he consistently refused to pay. The only avenue left to Mother to obtain any money that was rightfully hers was to use the alleged agreement to obtain the funds in escrow. When Mother used the document to take possession of the escrowed funds there was no benefit flowing to Mother. The escrowed money represented support money already owed to her. Thus, Mother's use of the 1997 document to access what was already rightfully hers does not constitute ratification of this decidedly one-sided agreement. *Compare National Auto Brokers Corp., supra* (holding profit gleaned from use of agreement constituted ratification through acceptance of "benefits flowing" from that agreement).

¶ 22 For the aforementioned reasons, we hold that the trial court properly refused to uphold the alleged child support agreement, as the alleged agreement was unenforceable on grounds of public policy, lack of adequate consideration, and contractual injustice. Accordingly, we affirm the court's decision to deny Father's petition for specific performance.

¶ 23 Order affirmed.

---

marital property, [Mother] was (at least in part) paying [Father's] support obligation for him. Thus at the time of equitable distribution, this matter must be addressed and [Father] may be charged with receipt of [some of] these funds even though [Mother] actually received them." *See* Trial Court Opinion at 2 n. 1.