Angelique S. KRAISINGER, Appellee

v.

Paul James KRAISINGER, Appellant.

Superior Court of Pennsylvania.

Argued April 11, 2007.

Filed July 3, 2007.

Joanne R. Wilder, Pittsburgh, for appellant.

Ronald L. Chicka, Jr., Greensburg, for appellee.

BEFORE: ORIE MELVIN, BOWES and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Paul James Kraisinger appeals the September 8, 2006, Order, which was later amended on October 12, 2006, denying the parties' exceptions to and making final the master's October 26, 2005, recommendation that from February 8, 2005, to January 26, 2006, appellant/husband pay $3,825 support per month for the parties' four minor children, and as of January 27, 2006, pay a reduced amount of $2,707 per month plus $193 per month for arrears.[1] The court, *inter alia*, further ordered that husband continue to pay to appellee/wife $2,393.50 per month pursuant to the parties' marriage settlement agreement. (1839 WDA 2006; trial court No. 264 DR 2005). Husband also appeals from the August 16, 2006, Order finding him in contempt for failing to abide by the parties' marriage settlement agreement, and ordering him to pay appellee wife $5,728.50. (1707 WDA 2006; trial court docket No. 1928 of 2001 D). We have *sua sponte* consolidated the two appeals.

¶ 2 The record reveals the following pertinent factual and procedural history. The parties married in January 1989 and had four children before wife filed for divorce on October 25, 2001. On April 20, 2002, the parties entered into a marriage settlement agreement which was incorporated with, but did not merge into, the May 15, 2002, Divorce Decree.

¶ 3 The parties' agreement encompassed such issues as property settlement, custody, and support. The terms pertinent in these appeals are as follows. Husband was to purchase a residence, "the farm", for wife. If wife sold the farm before the mortgage was satisfied, which she did, husband was to pay wife a monthly amount equivalent to the mortgage obligation, taxes and insurance, for a total of $2,393.35 per month, for a time period equal to the original term of the mortgage. Record, 1707 WDA 2006, No. 49, Exhibit A, at 4–5. He also was to pay "undivided family support" of $3,000 per month for 48 months beginning January 1, 2002, followed by a payment of $500 per month per child, with a 5% annual increase beginning January 1, 2007. Wife waived the right to seek additional child or spousal support "because of the amount Husband has agreed to pay for [wife's residence] including taxes and insurance until first mortgage is paid off or for 15 years, whichever is less." *Id.* at 6–7. The agreement further provided, in paragraph 5 of section VII, general provisions, that:

> In any action brought to challenge the contents of this Agreement by wife, she shall pay the reasonable attorney's fees for services rendered on behalf of the husband in such action plus any lost

---

1. The October 12, 2006, Order amended the September 8, 2006, Order in only one aspect. The September Order provided that husband was to pay wife $2,393.35 per month as *child support* based upon the parties' April 20, 2002, marriage settlement agreement. The October Order provided that husband was to pay wife $2,393.35 per month *as part of the property settlement* based upon the parties' marriage settlement agreement.

income on behalf of the husband regardless of the prevailing party. *This is included specifically to discourage frivolous proceedings.*

*Id.* at 8 (emphasis supplied).

¶ 4 Despite the parties' agreement, on February 8, 2005, wife filed for additional child support. In response, husband filed an answer, seeking summary judgment on whether, considering the terms of the parties' marriage settlement agreement, wife could pursue support. After oral argument on the summary judgment motion, the court ordered the matter to be heard by a hearing officer pursuant to *Roberts v. Furst*, 385 Pa.Super. 530, 561 A.2d 802, 803 (1989) (reiterating, "although one parent cannot bargain away a child's right to adequate support from the other, an agreement in which one parent releases the other from the duty of support will be enforced so long as it is fair and reasonable, was made without fraud or coercion, and does not prejudice the welfare of the children involved").

¶ 5 Pursuant to *Roberts*, the hearing officer considered whether the agreement was made without fraud and coercion, fair and reasonable, and did not prejudice the children's welfare. She determined there was no fraud or coercion. She further determined husband was paying $2,000 per month in child support ($500 per child). She also concluded that the $2,393.45 per month husband was paying for the mortgage must also be considered child support since the parties' agreement stated that wife waived the right to seek additional child support because of the amount husband agreed to pay for the mortgage. Since the hearing officer concluded husband was paying more than he would be required to pay under the support guidelines, she determined the agreement was fair and reasonable and did not prejudice the welfare of the children.

¶ 6 The court considered the parties' exceptions to the hearing officer's recommendations. It agreed with the hearing officer that there was no fraud or coercion. It determined, however, that the hearing officer erred in considering the mortgage payments to be child support. It found those payments were owed to wife as a result of the equitable distribution of marital property. The court conceded wife could waive her right to spousal support based upon the husband's mortgage obligation, but stressed that the child's right to support lies with the children and not the mother. The court also emphasized that wife purportedly waived the right to seek additional child support only until the first mortgage on the farm was paid off or for fifteen years, whichever was less. Wife sold the farm and the mortgage was paid off. Thus, wife's purported waiver was no longer in effect. The court then determined each child support payment of $2,000 was substantially less than the guidelines required and thus was not fair or reasonable. The court remanded to the hearing officer for recalculation of support based upon the new guidelines in effect. Ultimately, the court directed husband to pay support as set forth above.

¶ 7 In his timely appeal of the support Order, husband raises the following issues for our review:

I. Whether the trial court erred in overriding the parties' clear intent in their Marriage Settlement Agreement.

II. Whether the trial court erred in finding an ambiguity in the parties' Marriage Settlement Agreement.

III. Whether the trial court erred in failing to impute an earning capacity to Mother and misapplying the nurturing parent doctrine.

IV. Whether the trial court erred in failing to impute interest income to Mother.

V. Whether the trial court erred in failing to properly calculate Father's income.

Husband's brief, 1839 WDA 2006, at 7.

¶ 8 While the parties were litigating wife's support action, in June, July and August of 2006, husband paid $483.35 per month,[2] rather than the agreed upon $2,393.35 per month, for a deficiency of approximately $1,910 per month. As a result, wife filed a petition for contempt and husband filed a cross petition for contempt concerning custody issues. The petitions were consolidated and a hearing was held on August 15, 2006.[3]

¶ 9 During testimony, husband explained that pursuant to paragraph 5 of section VII of the parties' marriage settlement agreement, he sought to recover legal fees he incurred due to wife's filing of petitions to modify custody, support, and the vacation schedule, by deducting from the monthly property settlement and support payments he was to make to her.[4] Record, No. 46, 1928 of 2001 D, N.T., 8/15/06, at 80–82. We note that in his brief, husband indicates he sought to recover fees as a result of wife filing for an increase in child support. Husband's brief, 1707 WDA 2006, at 6–7. In any event, husband testified that simply going back to court was "frivolous" pursuant to paragraph 5 of section VII, and thus entitled him to legal fees. N.T., 8/15/06, at 85–86.

¶ 10 The court ruled from the bench immediately after the hearing. It stated that it considered no parol evidence but rather based its decision on that which it determined to be the clear and unambiguous language of both clauses of paragraph 5 of section VII. The court found the paragraph was apparently drafted to avoid frivolous law suits and since custody and support actions cannot be considered frivolous, the provisions of paragraph 5 of section VII were not applicable to those actions. In other words, wife did not owe husband for legal fees incurred in those actions, and husband improperly reduced his monthly payments to her. The court thus ordered husband to pay wife $5,728.50, an amount equal to three monthly payments of $1,909.50. *Id.* at 98–107.

¶ 11 In addition, the court found paragraph 5 of section VII was vague and violated public policy since it discouraged wife from exercising legal rights she may have had and that the children may have had, unfairly placed the burden upon wife to determine what is frivolous, was an unenforceable penalty clause, and was unconscionable. The court further concluded that husband alone drafted the clause, the result of which was that the parties no longer enjoyed a "level playing field" in any attempt to enforce the settlement agreement. By doing so, husband treated wife as a disadvantaged woman. For these reasons as well, the court believed the clause was against public policy and unconscionable. *Id.* at 104–105; *see also* Record, No. 49, 1707 WDA 2006, Trial Court Opinion, Bell, J., 10/26/06, at 24.

2. The record indicates husband paid either $483.35 per month or $483.53 per month. Record, No. 46, 1928 of 2001 D, N.T., 8/15/06, at 21, 43.

3. The parties resolved the custody issues and the court dismissed husband's contempt petition without prejudice.

4. Husband testified he did not know the full amount he planned to deduct. N.T., 8/15/06, at 69–74, 76. Wife testified she was never informed as to the amount husband planned to recover. *Id.* at 45.

¶ 12 As to the ruling on the contempt petition, husband raises the following questions for our review:

I.    Whether the trial court erred in finding Husband in contempt of court for failing to abide by the conditions of the parties' Marriage Settlement Agreement.

II.   Whether the trial court erred in finding that Husband misread the parties' Marriage Settlement Agreement.

III.  Whether the trial court erred in construing the language of Section VII, Paragraph 5, of the parties' Marriage Settlement Agreement contrary to the plain language therein.

IV.   Whether the trial court erred in directing Father [a.k.a. husband] to pay Mother [a.k.a. wife] the sum of $5,728.50.

Husband's brief, 1707 WDA 2006, at 5.

¶ 13 The following legal principles are applicable in the review of a marriage settlement agreement. "A marital support agreement incorporated but not merged into the divorce decree survives the decree and is enforceable at law or equity. A settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise." *Stamerro v. Stamerro*, 889 A.2d 1251, 1258 (Pa.Super.2005) (citations and quotations omitted).

¶ 14 In conducting our review of the court's holding as to the marriage settlement agreement, we remain cognizant of the following:

Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

*Id.* at 1257–1258 (citations and quotations omitted).

When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

*Id.* at 1257 (citations and quotations omitted).

¶ 15 In husband's appeal as to the support Order, he first argues the court erred in determining that wife waived additional child support from husband in consideration for a transfer pursuant to the equitable distribution of marital property, i.e., in consideration for husband's payment of the mortgage on the farm. He contends, rather, that his mortgage payments were part of his child support obligation, and mother waived her right to additional support. With the inclusion of the mortgage payments, he insists he was paying more than the support guidelines required him to pay. He argues the parties' agreement as to this issue was consistent with the case of *Roberts v. Furst, supra*, was fair and reasonable, made without fraud or coercion, and did not prejudice the welfare of the children.

¶ 16 Upon our plenary review, we agree with the court's interpretation of the contract, that husband's obligation to purchase the farm, and to continue to make mortgage payments for the length of the original mortgage, even in the event that wife sold the farm, was clearly part of the property settlement. The provisions pro-

viding for the payment are under the property settlement section of the parties' agreement, and they are to continue for the length of the mortgage even if the property is sold. Record, No. 62, 264 DR 2005, Exhibit A, at 3–5, ¶¶ 4 and 14. We emphasize that the length of the payments is not in any way related to the age of the children or any other milestone in the children's lives. In addition, we emphasize that the agreement explicitly provides that in the event wife sold the farm and husband was making the equivalent of the mortgage payments to her, wife had unfettered discretion to use the money "for whatever purpose Wife deems appropriate...." *Id.* at 5, ¶ 14. Certainly if those payments were child support, husband would not and should not have agreed that wife had unfettered discretion as to the use of the funds. As for the support provisions of the agreement, the only mention of the mortgage payments in that section is wife's purported waiver of her "right" to seek additional child or spousal support "because husband has agreed to pay for [the] farm ...". *Id.* at 6–7, ¶ 6. We conclude, without hesitation, that husband's mortgage or payments equivalent to the mortgage in the event of the sale of the farm, were part of the property settlement and were not child support.[5]

¶ 17 Excluding the mortgage payments which we conclude were not child support, the agreement required husband to pay $500 in child support per child per month as of January 1, 2006. *Id.* We are left then to consider whether the court erred in concluding the payments of $500 per month per child are invalid. As previously stated, under *Roberts,* parties can make an agreement as to child support if it is fair and reasonable, made without fraud or coercion, and does not prejudice the welfare of the children. We agree with the court that the parties' agreement here violates the *Roberts* standard as it requires husband to pay substantially less child support than the guidelines would require and thus is not fair or reasonable, and prejudices the welfare of the children.[6]

¶ 18 The following is also pertinent:

Parties to a divorce action may bargain between themselves and structure their agreement as best serves their interests, ... They have no power, however, to bargain away the rights of their children, ... Their right to bargain for themselves is their own business. They cannot in that process set a standard that will leave their children short. Their bargain may be eminently fair, give all that the children might require and be enforceable because it is fair. When it gives less than required or less than can be given to provide for the best interest of the children, it falls under the jurisdiction of the court's wide and nec-

---

5. We also note husband stopped paying the amount of the mortgage in March 2005 for two or three months, after wife filed the support action in February 2005, but resumed when he was held in contempt and ordered to do so. Record, 1707 WDA 2006, N.T., 8/15/06, at 42–43. Also, husband appealed the court's finding that he was in contempt for reducing his payment of $2,393.50 per month he owed wife to $483.35 per month, for a deficiency of approximately $1,910 per month. By his own admission, he paid a lesser amount in an effort to recoup legal costs he incurred *defending* wife's support

action. So, if we accept husband's allegation that the $2,393.50 is child support, then we must necessarily conclude that he reduced the child support payments by almost $2,000 per month, because wife sought more child support.

6. Husband acknowledges in his brief that $500 per month per child under the parties' circumstances is below the support guidelines. Husband's brief, 1839 WDA 2006, at 17.

essary powers to provide for that best interest.... [The parties bargain] is at best advisory to the court and swings on the tides of the necessity that the children be provided.

*Knorr v. Knorr*, 527 Pa. 83, 86, 588 A.2d 503, 505 (1991). The parties' bargain in this case left the children short.

¶ 19 In sum, the unambiguous language of the agreement provides that wife purportedly waived her right to seek additional child support money in exchange for part of an equitable distribution award. This waiver was invalid, since it left the children without sufficient support.

¶ 20 Husband further contends that if, in fact, the parties entered into a contract pursuant to which mother purportedly waived the right to seek further support in consideration for just $500 per month for the support of each child, the parties were mutually mistaken as to the legality of the agreement and thus the entire agreement is invalid. Husband's brief, 1839 WDA 2006, at 16–17. This allegation expressly contradicts the explicit language of the parties' agreement which provides:

If any part or portion of this agreement shall deem to be declared to be invalid or unenforceable, then such part or portion shall be disregarded, but all of the other provisions shall remain in full force and effect.

Record, No. 62, 264 DR 2005, Exhibit A, at 7, ¶ 3. "[A] court is bound by the clear language of a contract as to severability." *Jacobs v. CNG Transmission Corp.*, 565 Pa. 228, 238, 772 A.2d 445, 451 (2001). Thus, we must reject husband's argument.

¶ 21 Husband further disagrees with the court's conclusion that wife's purported waiver was no longer effective after she sold the farm and thus the mortgage was paid. He notes that after the mortgage was paid, the agreement still obligated him to make payments equal to the mortgage payments for the length of the original mortgage. He contends the court's holding is consistent with his belief that the payment was for support and not property settlement. It is not necessary for us to address this issue since we already have concluded wife's waiver was invalid, since the parties' agreement as to child support did not comport with the standard enunciated in *Roberts*.

¶ 22 Secondly, husband argues there was no ambiguity in the agreement and the court erred in stating that the parties' agreement is "confusing and misleading." Husband however merely repeats his allegations that the mortgage payments are child support. We disagree for the reasons stated above.

¶ 23 At this point we note that in determining whether the parties' agreement as to child support was fair and reasonable and whether it prejudiced the children, the hearing officer first determined the parties' respective incomes and the applicable support guidelines. Record, No. 62, 264 DR 2005, Appendix 3, at 28–31. The court utilized this information in formulating the support Order from which husband appeals. Husband's remaining three allegations of error as to the support Order relate to the hearing officer's calculations of the parties' respective incomes, as accepted by the court.

¶ 24 Our review of a support Order is circumscribed.

On appeal, a trial court's child support order will not be disturbed unless there is insufficient evidence to sustain it or the court abused its discretion in fashioning the award. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unrea-

sonable, or the result of partiality, prejudice, bias, or ill-will, as shown by evidence on the record, discretion is abused.

*Doherty v. Doherty,* 859 A.2d 811, 812 (Pa.Super.2004).

¶ 25 Husband next asserts the court erred in applying the nurturing parent doctrine and in failing to impute an earning capacity to wife when fashioning the support Order.

¶ 26 In appropriate cases the earning capacity of a parent who elects to stay home with a young child need not be considered when calculating support. This nurturing parent doctrine excuses the parent from contributing support. *Kelly v. Kelly,* 430 Pa.Super. 31, 633 A.2d 218, 220 (1993).

The nurturing parent doctrine ... recognizes that a custodial parent who stays at home and cares for a child does, in fact, support the child. In determining whether to expect a nurturing parent to seek employment, the trial court must balance factors such as the age and maturity of the child, the availability and adequacy of others who might assist the custodial parent, and the adequacy of available financial resources if the parent does remain at home.

*Doherty, supra* at 813.

¶ 27 The hearing officer reviewed the testimony, including that of husband's vocational expert, and relied upon the nurturing parent doctrine to establish wife's income at $0 per month. She noted that the parties made a conscious decision to allow wife to stay home while they were together and concluded that wife should be afforded the opportunity to do the same until the parties' youngest child is in school full-time. The hearing officer found husband's vocational expert to be credible but acknowledged that on cross-examination, she admitted she had not considered the fact that wife has four children. The hearing officer found this to be relevant, particularly because the youngest child did not yet attend school full-time. Record, No. 62, 264 DR 2005, Appendix 3, at 28–30. The trial court considered the evidence and the hearing officer's rational and affirmed the application of the doctrine. Record, No. 45, 264 DR 2005, Trial Court Opinion, Bell, J., 5/4/06, at 8–9.

¶ 28 Husband alleges this was error since wife worked when the parties were together and had two infant children, and alleges she was employed until they had four young children. Record, 264 DR 2005, N.T., 9/21/05, at 74–75. He emphasizes that the youngest child was then attending half-day kindergarten. He further contends that he can provide daycare at no cost in his own facility. *Id.* at 227–228.

¶ 29 We emphasize, as did the trial court, that the hearing officer recommended that wife be afforded the opportunity to stay at home with the youngest child *until the child is in school full-time.* Record, No. 45, 264 DR 2005, Trial Court Opinion, Bell, J., 5/4/06, at 15; Record, No. 62, 264 DR 2005, Appendix 3, at 29. Thus, husband may certainly seek to revisit the issue when all of the children are in school full-time. We note that the youngest child, Owen, is approximately 7½ years of age and presumably is now in school full-time. As the parties apparently agreed wife should stay home with the children while they were together, (at least when there were four young children), we can discern no reason to disturb the finding that the youngest child should receive that same benefit until the child is in school full-time. We also note that wife may not have been providing financial support to the children as a result of the court's holding, the courts recognize, by the appli-

cation of the nurturing parent doctrine, that she nonetheless was supporting the children.

¶ 30 We find that the hearing officer's and trial court's conclusions were not reached as the result of partiality, prejudice, bias, or ill-will nor was the law overridden or the judgment exercised manifestly unreasonable as the hearing officer and trial court considered and weighed all of the factors necessary for application of the nurturing parent doctrine. Accordingly, we must affirm but reiterate that as the youngest child is now of school age, husband is free to revisit the issue of child support in light of mother's earning capacity.

■ ¶ 31 Husband next contends the court erred in failing to impute interest income to wife on the gain realized from the sale of the farm since he made a $60,000 down payment on the farm and she has generated profit on that through her subsequent real estate transfers. Husband's brief, 1839 WDA 2006, at 28–29. This one-paragraph argument is undeveloped and does not warrant our review. *See Keller v. Keller,* 760 A.2d 22, 25 (Pa.Super.2000) (reiterating that appellate courts do not review undeveloped arguments). In addition we note that husband raised this issue in his exceptions filed before the trial court but chose not to argue them. Record, No. 62, 264 DR 2005, Trial Court Opinion, Bell, J., 9/8/06, at 18. Thus, the court did not address them. "In order to preserve an issue for appeal, a party must make an exception to the Hearing Officer's report." *Hayward v. Hayward,* 868 A.2d 554, 561 (Pa.Super.2005), *citing, inter alia,* Pa.R.C.P. 1920.55–2, **Master's Report. Notice. Exceptions. Final Decree,** (b). If a party fails to do so, the issue is waived. *Hayward* at 561. Husband's failure to argue the exception was tantamount to a failure

to make an exception. As a result, we lack the benefit of a trial court Opinion on the issue, and this hampers our review. Accordingly, we find the issue is waived.

■ ¶ 32 Finally as to the support Order, husband contends the hearing officer and the trial court failed to consider all of the information on his 2004 tax returns. Specifically, he insists his dental practice pays rent to another of his entities, the Kraisinger Family Partnership (KFP), which in turn pays the mortgage on the building in which the dental practice is located, but the rent does not cover the mortgage, thus he loses money on KFP and those losses must be deducted from his income. He acknowledges that pursuant to IRS regulations, his 2004 tax return shows a loss of $679 after disallowed losses, but contends his actual loss for that year was $24,220. Husband's brief, 1839 WDA 2006, at 29–31. The court acknowledged husband's exception on this issue but noted, as husband also acknowledged, that pursuant to IRS regulations, certain actual losses were disallowed and thus the $679 figure for losses was utilized. Record, No. 62, 264 DR 2005, Trial Court Opinion, Bell, J., 9/8/06, at 13. Husband simply has failed to establish that the court erred in any way. He cites no authority for his position that losses which are disallowed by the IRS must be considered by a court in determining income. Thus, we must reject this allegation of error.

¶ 33 As to husband's income, wife contends the trial court understated father's income, and that pursuant to the formula set forth in *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984) (holding that when the parties' combined net income exceeds $ 15,000 per month, child support shall be calculated pursuant to a reasonable expenses analysis), the court should have considered husband's income for the

three years preceding the support hearing (2002, 2003, and 2004), instead of only the tax year preceding the hearing (2004). She also contends the court should have considered the *real estate* depreciation husband reported to be income, and thus ordered husband to pay $5,546 per month child support. Wife further claims husband's credibility is undermined because he amended his tax returns just after she filed her support action, claiming child support and property distribution payments to be alimony in an alleged attempt to shift the tax burden to her. Wife's brief, 1839 WDA 2006, at 23–26.

¶ 34 As to the depreciation deductions, husband contends they were properly not considered income as they were capital expenditures used in the expansion of his business. Husband's brief, 1839 WDA 2006, at 29–30.

¶ 35 The hearing officer concluded the depreciation expenses were properly excluded from husband's income. Record, No. 62, 264 DR 2005, Appendix 3, at 29–30. The hearing officer relied upon, *inter alia,* the case of *Labar v. Labar,* 557 Pa. 54, 731 A.2d 1252 (1999) (holding that depreciation deductions were improperly included as income where there was no evidence that the appellee was using the corporation to shelter income because the depreciation did not generate cash flow, and that the depreciation was not additional income, but an indication that the corporation made capital expenditures). *See* Record, No. 62, 264 DR 2005, Appendix 3, at 29–30. The trial court reviewed the matter and concluded the depreciation deductions were for actual cash outlays and the replacement of worn equipment, and was not for the depreciation of real estate. Record, No. 62, 264 DR 2005, Trial Court Opinion, Bell, J., 9/8/06, at 18.

¶ 36 As for the hearing officer's decision to utilize only husband's 2004

income, the hearing officer did not provide an explicit rationale, but in that she did discuss the fact husband's income had decreased in both 2003 and 2004, that appears to be her reasoning. Further, she found this reduction in income was not voluntary. Record, No. 62, 264 DR 2005, Appendix 3, at 30. The court accepted the hearing officer's finding on this issue. It noted husband had no way of knowing wife would file for support in 2005. Record, No. 62, 264 DR 2005, Trial Court Opinion, Bell, J., 9/8/06, at 17. We note, "[A] master's report and recommendation are to be given the fullest consideration, especially on the issue of the credibility of witnesses." *Moran v. Moran,* 839 A.2d 1091, 1098 (Pa.Super.2003). We must accept these findings as we find no evidence that the hearing officer's and trial court's conclusions were reached as the result of partiality, prejudice, bias, or ill-will nor was the law overridden or the judgment exercised manifestly unreasonable.

¶ 37 We have reviewed wife's arguments and first note that wife did not establish that the depreciation was for real estate as opposed to equipment. She did not cite to the record on this issue and we will not do her work for her. Rather, as the hearing officer noted and wife fails to establish otherwise, husband's uncontradicted testimony established that the depreciation was on equipment. Record, No. 62, 264 DR 2005, Appendix 3, at 30–31. In addition, we note that the hearing officer's decision was largely based upon a credibility determination that the purchases of the items were necessary business—related expenses and were not taken to avoid distributions to husband. Wife disputes this, but we must remain cognizant that a hearing officer's credibility determination must be accorded great weight. *See Moran, supra.* For these reasons, we find wife

has failed to establish her entitlement to relief on this issue.

¶ 38 We now address husband's appeal of the court's Order finding him in contempt for failing to abide by the parties' marriage settlement agreement, and ordering him to pay appellee wife $5,728.50.

¶ 39 We emphasize that husband, in his brief to this Court, indicates he sought to recover legal fees he incurred *in defending mother's action to increase child support.* Husband's brief, 1707 WDA 2006, at 6–7. We also note that the parties' agreement unambiguously provided that wife purportedly waived her right to seek additional child support until husband paid off the mortgage or for 15 years, whichever was less, because of the amount husband agreed to pay for her home. Record, No. 49, 1707 WDA 2006, Exhibit A, at 7.

¶ 40 A child's right to adequate support cannot be bargained away by either parent and any release or compromise is invalid to the extent it prejudices a child's welfare. *See Sams v. Sams,* 808 A.2d 206, 211 (Pa.Super.2002), *citing, inter alia, Kesler v. Weniger,* 744 A.2d 794 (Pa.Super.2000); *accord Ferguson v. McKiernan,* 855 A.2d 121, 123 (Pa.Super.2004).

Contracts between husband and wife, **if fairly made,** are generally considered binding as to them, although legally ineffective to oust the jurisdiction of the court in a support action. A mother cannot, by contract, bargain away the right of her minor children to adequate support from the father, regardless of the validity of the agreement as between the parents themselves. *In each case it is for the court to determine whether or not the terms of the agreement are reasonable,* made without fraud or coercion, and have been carried out in good faith.

*Sams* at 211, *citing Miesen v. Frank,* 361 Pa.Super. 204, 522 A.2d 85, 87 (1987) (bold emphasis in original, underline emphasis added).

¶ 41 We conclude that paragraph 5 of section VII is invalid to the extent that it penalizes mother for, and therefore would act to discourage her from, seeking a court's review of the parties' agreement as to child support. This case is a quintessential example as to why such a provision cannot be tolerated. Here, the parties' agreement as to support was simply insufficient as it was far below the guidelines. Wife easily could have been dissuaded from pursuing her support action because the parties' agreement purported to financially penalize her for doing so. We cannot tolerate a provision which penalizes a parent for pursuing her children's rights. It is invalid because it prejudices a child's welfare. *See Sams; see also Roberts v. Furst, supra* (holding parties' agreement as to child support will be upheld if fair and reasonable, made without fraud or coercion, and does not prejudice the welfare of the children.).

¶ 42 We thus agree with the court's conclusion that paragraph 5 of section VII violated public policy since it discouraged wife from exercising legal rights that the children may have. *See* N.T., at 104–105; Trial Court Opinion at 21. Wife does not owe husband attorney's fees for pursuing an action to increase child support. Husband improperly reduced his payments to wife to recover those fees he incurred. For these reasons, we must affirm the court's Order.

¶ 43 We, of course, have read husband's brief in its entirety and find it unnecessary to address each of his allegations of error. The above rationale is dispositive of this case.

¶ 44 Orders affirmed.