J-S01016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MATTHEW GROFF | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ASHLEY GROFF | : | No. 956 MDA 2021 |

Appeal from the Order Entered June 17, 2021
In the Court of Common Pleas of Union County Domestic Relations at
No(s):  19-90135

BEFORE:   BOWES, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                     **FILED:  MAY 24, 2022**

Matthew Groff (Father) appeals from the final child support order directing Ashley Groff (Mother) to make monthly payments of $656.55 for their minor child K.G. (the child), born in 2011.  Father claims that the trial court erred in (1) applying provisions of the marital separation agreement (MSA) that obligated him to pay certain expenses, and (2) failing to include federal COVID stimulus payments as income when calculating the parties' child support obligations.  We affirm.

By way of background, Father and Mother married in 2010 and separated in 2018.  On January 29, 2019, Father and Mother entered into a MSA, which provided, in part, as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

## 12. Custody:

Husband is the natural Father and Wife is the natural Mother of [the child].   [Father and Mother] hereby agree as follows:

a. The parties shall equally share legal custody of the child....

b. The parties shall have equally shared physical custody (i.e. 50/50) of the child on such dates, including holidays, and at such times as the parties can mutually agree upon, that agreement not to be unreasonably withheld.

\* \* \*

h. [Father] shall continue to maintain the child on his health insurance coverage through his employment for so long as existing federal law continues to allow him to do so.  [Father] shall continue to pay for and provide coverage for the child until he reaches age eighteen (18), or until he reaches the age of twenty-six (26) if he is enrolled as a full-time student.  In the event that [Father] loses his employment through no fault of his own, then [Father and Mother] agree to provide the same or similar coverage currently available to [Mother] through her employment and for the same or similar time period (i.e. age 18 or 26 if enrolled as a full-time student) and [Father and Mother] agree to each pay 50% of the cost to provide such coverage.

i. [Father] shall be responsible for all expenses associated with the child's medical, dental and vision care, all expenses associated with the child's daycare, including summer daycare, daycare for school closures and days off from school, all expenses for after school and before school morning programs, as needed, and all expenses for the child's lunches throughout the school year.   In the event that [Father] loses his employment through no fault of his own, then [Father and Mother] agree to split evenly (i.e. 50/50) all expenses associated with the child's medical, dental and vision care.

MSA, 1/29/19, at 6-8.  The MSA provided that the agreement did not merge into a divorce decree and modifications required a writing between Father and Mother.  *Id.* at 8, 10.

- 2 -

In September 2020, in a separate custody action, a court awarded Father primary physical custody of the child, with Mother having partial physical custody.[1] Specifically, the custody order directed that before Father and Mother engaged in counseling, Mother would have the child every other weekend from Saturday to Monday and every other Thursday to Friday. After counseling started, and with the agreement of the child's guardian *ad litem*, Mother could have her alternate weekend custody expanded to include Fridays.

On October 29, 2020, Father filed a complaint for child support. On December 15, 2020, the trial court entered an interim order directing Mother to pay $694.57 per month in child support. The interim order included an amount of $250.00 per year for unreimbursed medical expenses as support and required Father to pay 56.79% and Mother pay 43.21% of unreimbursed medical expenses over $250.00.

Mother timely requested a *de novo* hearing, which the trial court held on February 8, 2021. At the hearing, Mother's counsel asserted that the December 15, 2020 interim order "violat[ed]" the MSA's provisions requiring Father to maintain health insurance for the child and pay other expenses. N.T., 2/8/21, at 2-3. Father's counsel responded that the MSA provisions

---

[1] The separate custody action was docketed at CV-19-092. The reasons for the separate custody action do not appear in the record in this matter. The court entered the initial custody order on September 1, 2020, and entered an amended order on September 22, 2020, upon an agreement between the parties.

were unenforceable because they bargained away the child's right to support. *Id.* at 5. Additionally, Father's counsel noted that Father and Mother entered into the MSA when they had "shared 50/50 custody," but Father now had primary custody pursuant to the separate custody action. *Id.* Father's counsel also contested the reliability of the calculations of Father's and Mother's gross incomes and the other calculations using the support guidelines.[2] *Id.* at 11.

The trial court concluded that the MSA provisions were enforceable and did not constitute a bargaining away of Mother's child support obligations. *Id.* at 14. The court indicated that the MSA appeared to enhance the support of the child by allocating the duty to pay certain expenses. *Id.* at 10, 19. On February 11, 2021, the court entered an order remanding the matter to the Domestic Relations Section to recalculate Father's and Mother's gross incomes and address the allocation of medical expenses based on the MSA. Order, 2/11/21. Upon Father's request, the February 11, 2021 order provided that the remand would result in a new interim order so that any appeals could be taken "all at one time" in the future. *Id.*; N.T., 2/8/21, at 14-15.

_____

[2] A representative from the Domestic Relations Section stated at the hearing that the support guidelines accounted for Father having primary custody of the child. *See* N.T., 2/8/21, at 12.

On February 17, 2021, the trial court issued a modified order directing Mother to pay $656.55 per month in child support.[3] The February 17, 2021 order directed Father to provide for the child's medical insurance and pay for all unreimbursed medical expenses.

Father timely requested a hearing *de novo*, and the trial court held a hearing on May 11, 2021. Father's counsel again objected to the modified order, asserting that the MSA should be modified due to changed circumstances and that the expenses listed in paragraphs (h) and (i) of the MSA should be allocated between Father and Mother. *See* N.T., 5/11/21, at 15. Additionally, Father argued that the COVID stimulus payments constituted income for Father and Mother. *See id.* Father and Mother, through their respective counsel, admitted exhibits, including documents indicating that Father received $3,200.00 in COVID stimulus payments in 2020 and 2021, and that Mother received $3,200.00 on her own behalf, and $2,500.00 on behalf of the child.[4] Father's counsel also admitted exhibits concerning his

---

[3] The trial court entered the February 17, 2021 order on February 24, 2021. The interim and modified orders entered on December 15, 2020, and February 24, 2021, respectively, calculated Mother's gross monthly income as $5,506.14 and net monthly income as $4,391.00 and Father's gross monthly income as $7,742.01 and net monthly income as $5,771.15.

[4] Father's exhibit referred to the federal payments under the Coronavirus Aid, Relief and Economic Security Act (CARES Act), P.L. 116-136, in 2020, the "Consolidated Appropriations Act," P.L. 116-260, in 2021, and the "American Rescue Plan," P.L. 117-2, in 2021. At the hearing, a representative from the Domestic Relations Section asserted that it was her office's practice not to count the COVID stimulus payments because they were one-time payments
*(Footnote Continued Next Page)*

costs of providing insurance for the child. At the conclusion of the hearing, the court permitted Father and Mother to submit additional briefs.

On June 17, 2021, the trial court entered an order adopting the February 17, 2021 modified order as a final order. In its "decision notes" attached to the order, the court addressed the legal arguments raised by Father concerning the MSA and the COVID stimulus payments.

First, the trial court rejected Father's argument that the MSA should not control the determination of the parties' child support obligations. Order, 6/17/21, at 2. The court concluded that the MSA "does not bargain away the child's right to receive the appropriate amount of child support." *Id.* The court reasoned that *Kost v. Kost*, 757 A.2d 952 (Pa. Super. 2000) was distinguishable because, in that case, the parties' agreement provided for the father to contribute a specific amount of child support and prohibited the mother from seeking an increase. *Id.* Additionally, the court cited *Kimock v. Jones*, 47 A.3d 850 (Pa. Super. 2012), and it concluded that Father's primary custody of the child was an insufficient change in circumstances to modify the MSA. *Id.*

Second, the trial court concluded that the COVID stimulus payments constituted advances on federal tax credits that did not count as income for the purpose of calculating child support. *Id.* at 2-3. The court noted that it found no decisional law concerning Father's argument but that "[t]he Union

_____

and the stimulus was not expected to continue after the first payment. N.T., 5/11/21, at 23.

- 6 -

County Domestic Relations Office has not been including these payments" when calculating child support. *Id.* at 2. The court further reasoned that the COVID stimulus payments were more similar to a public assistance payment, which are not included as income under the child support guidelines, and that the payments were temporary in nature. *Id.* at 3.

Father timely appealed the order entering a final child support order and complied with the trial court's order to submit a Pa.R.A.P. 1925(b) statement. The trial court filed a statement in lieu of a Rule 1925(a) opinion that relied on its June 17, 2021 decision notes.

Father presents the following questions for review:

1. Did the [t]rial [c]ourt err and/or commit an abuse of discretion by concluding that a material change in circumstances did not exist to warrant the requested modification, and further failed to allocate the child's healthcare, child care, and summer camp expenses between the parties?

2. Did the [t]rial [c]ourt err and/or commit an abuse of discretion by failing to properly consider the facts of record, and the relevant Pa.R.C.P. to include Pa.R.C.P. 1910.16-1 and 1910.16-2, regarding treating the economic stimulus monies received by the parties, on behalf of themselves as well as on behalf of the . . . child . . . as income, in calculating the child support due the . . . child.

Father's Brief at 4.

Father first contends that the trial court erred in declining to allocate the expenses covered in paragraphs 12(h) and (i) of the MSA between him and Mother. *Id.* at 24-26. Father reiterates his arguments that the application of the MSA bargains away the child's right to support and that his primary

- 7 -

physical custody of the child constitutes a change in circumstances justifying the modification of the MSA.[5] *Id.* at 26.

The standard governing our review of a child support order is follows:

> [T]his Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*M.E.W. v. W.L.W.*, 240 A.3d 626, 634 (Pa. Super. 2020) (citation omitted).

"The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses." *E.R.L. v. C.K.L.*, 126 A.3d 1004, 1006 (Pa. Super. 2015) (citation and quotation marks omitted). Generally, a court determines child support using the support guidelines. *See* Pa.R.C.P. 1910.16-1 to 1910.16-7 (subsequently amended eff. Jan.1, 2022).[6] "[T]here is a rebuttable presumption that the guideline

_____

[5] Father also asserts that he raised other changed circumstances including his challenges to the calculation of his and Mother's bonuses and the receipt of COVID stimulus payments. Father's Brief at 26. We note, however, that Father did not preserve these arguments in the trial court. In any event, we discern no basis to conclude that the alleged miscalculations of bonuses or the issue concerning the COVID stimulus payments constitute changed circumstances necessary to modify the MSA.

[6] This decision refers to the version of the support guidelines in place before the most recent amendments that took effect on January 1, 2022.

calculated support obligation is the correct support obligation." Pa.R.C.P. 1910.16-1(d); *see also Ileiwat v. Labadi*, 233 A.3d 853, 861 (Pa. Super. 2020).

Pennsylvania courts recognize that parents may enter agreements concerning child support but cannot "leave their children short." *Kraisinger v. Kraisinger*, 928 A.2d 333, 340 (Pa. Super. 2007) (quoting *Knorr v. Knorr*, 588 A.2d 503, 505 (Pa. 1991)). "Private support agreements are subject to contract principles and enforceable in an action at law for damages or in equity for specific performance. Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements."[7] *Sams v. Sams*, 808 A.2d 206, 211 (Pa. Super. 2002) (citations and quotation marks omitted). Therefore, if an agreement is fairly made and adequately provides for a child, a court may consider it binding on the parties. *Id.* However, a parent cannot bargain away the right of a minor child to adequate support from the other parent. *Id.* An agreement concerning child support, "is at best advisory to the court," and the court can consider whether the agreement adequately serves the needs of a child. *Knorr*, 588 A.2d at 505. Additionally, the Divorce Code states that "[a] provision of an agreement regarding child support . . . shall be subject to modification by the upon a showing of changed circumstances." 23 Pa.C.S. § 3105(b).

---

[7] Additionally, because private support agreements constitute contracts, our review of the trial court's interpretation of the MSA here raises a question of law over which our standard of review is *de novo* and our scope of review is plenary. *Kraisinger*, 928 A.2d at 339 (citation omitted).

In **Kost**, a father appealed from an order directing him to pay $1,135.15 per month for the support of his two children. **Kost**, 757 A.2d at 953. The father and mother entered into an agreement under which the father paid $1,000.00 per month. **Id.** When the older child turned eighteen, the father and mother entered into another agreement for the father to continue to pay $1,000.00 per month to support both children, if the older child remained in college. The mother agreed not to seek an increase in support for the younger child while the younger child was a minor. **Id.** The mother subsequently filed a petition for increased support for the younger child, which the trial court granted. **Id.** at 954.

On appeal, the **Kost** Court rejected the father's arguments that the mother failed to show a change in circumstance and promised not to seek increased support for the younger child. **Id.** The Court reasoned that the support guidelines recommended a support amount for the younger child that "was 75% more than [he] was currently paying under the agreement." **Id.** The Court found this differential so significant that "it must be presumed that the agreement entered by the parties [did] not provide fair and just support for the child." **Id.** For those reasons, the **Kost** Court concluded that the trial court properly refused to apply the parties' agreements. **Id.**

Instantly, we discern no error in the trial court's rejection of Father's argument that the continued application of the MSA bargained away Mother's duty to support the child. Unlike **Kost**, the MSA in the instant matter provided that Father would pay for expenses for the child, including: (1) health

- 10 -

insurance coverage; (2) medical, dental and vision care; (3) daycare, including for the summer, school closures, and days off from school, and before and after school programs; and (4) school lunches. *See* MSA at 8-9. As noted by the trial court, these provisions "enhance[d]" the child's welfare rather than limiting either Father's or Mother's obligations to the child. *See* N.T., 2/8/21, at 10, 19; *see also* Order, 6/17/21, at 2. Further, unlike *Kost*, there was no evidence that enforcement of the MSA would result in inadequate support for the child's basic needs. *See Kost*, 757 A.2d at 954.

Further, we discern no error in the trial court's ruling that Father did not establish a change in circumstances sufficient to avoid his agreement to pay certain expenses for the child. Although the MSA contemplated that Father and Mother shared custody of the child "50/50," the MSA contains no language establishing that shared custody was a condition precedent to Father's obligations or permitting modification based on changes to the custody arrangement. Father cites no case law establishing that an increase in custodial time warrants a modification of a child support agreement. Further, as noted by the trial court, a change in the custodial arrangement alone will not avoid an otherwise valid and enforceable agreement that provides for a child. *See Kimock v. Jones*, 47 A.3d 850, 856 (Pa. Super. 2012) (noting that "the amount of time a parent spends with his child has no bearing on the parent's obligation to provide support" and rejecting the father's argument that a custody order limiting his custody did not constitute a material and substantial change warranting relief from his support obligation (citation

- 11 -

omitted)); *cf. Colonna v. Colonna*, 855 A.2d 648, 651-52 (Pa. 2004) (reversing this Court's conclusion that the termination of a father's support obligation was appropriate because the children spent 73% of their time with the father, given that there was a disparity in the parties' income and the trial court failed to consider whether a deviation from the support guidelines was appropriate).

Accordingly, we conclude that Father has failed to establish an abuse of discretion or error of law in the trial court's decision to reject his request to reallocate the expenses specified in in paragraphs 12(h) and (i) of the MSA. *See M.E.W.*, 240 A.3d at 634. Therefore, he is not entitled to relief.

Father next claims that the trial court erred in failing to consider the COVID stimulus payments as income. Father asserts that "a simple review" of the congressional acts authorizing the payments "clearly establish that the stimulus payments are not to be considered 'income' on which the parties are required to pay income tax; but rather are deemed to be an advanced payment of a tax credit." Father's Brief at 30. Father argues that the trial court should have treated the payments as a child tax credit or tax refund, which the support guidelines define as income. *Id.* at 30-31 (citing Pa.R.C.P. 1910.16-2(a)(8), (f)). Father continues that the trial court should have included the COVID stimulus payments when applying the guidelines "in order to maximize the total income available to the parties and the child." *Id.* at 32.

The support guidelines state the following:

Generally, the basic child support, spousal support, or alimony *pendente lite* obligation is based on the parties' monthly net incomes.

**(a) Monthly Gross Income**. Monthly gross income is ordinarily based on at least a six-month average of a party's income. The support law, 23 Pa.C.S. § 4302, defines the term "income" and includes income from any source. The statute lists many types of income including, but not limited to:

[listing types of income, including wages, net income from business, interest, pensions, estate income, social security disability, unemployment compensation, and alimony, and]

(8) other entitlements to money or lump sum awards, without regard to source, including lottery winnings, income tax refunds, insurance compensation or settlements; awards and verdicts; and any form of payment due to and collectible by an individual regardless of source.

*Note*: The trial court has discretion to determine the most appropriate method for imputing lump sum awards as income for purposes of establishing or modifying the party's support obligation. These awards may be annualized or they may be averaged over a shorter or longer period of time depending on the circumstances of the case. They may also be escrowed in an amount sufficient to secure the support obligation during that period of time.

Income tax refunds should not be included as income to the extent they were already factored into the party's actual tax obligation for purposes of arriving at his or her net income.

\* \* \*

**(b) Treatment of Public Assistance, SSI Benefits, Social Security Payments to a Child Due to a Parent's Death, Disability or Retirement and Foster Care Payments.**

(1) Public Assistance and SSI Benefits. Neither public assistance nor Supplemental Security Income (SSI) benefits shall be included as income for determining support.

\* \* \*

**(f) Child Tax Credit.** In order to maximize the total income available to the parties and children, the trier-of-fact may award,

as appropriate, the federal child tax credit to the non-custodial parent, or to either parent in cases of equally shared custody, and order the other party to execute the waiver required by the Internal Revenue Code, 26 U.S.C. § 152(e). The tax consequences associated with the federal child tax credit must be considered in calculating the party's monthly net income available for support.

Pa.R.C.P. 1910.16-2(a)(8), (b)(1), (f).

Instantly, the trial court reasoned that it would not include the COVID payments as income for either party because: (1) the payments were temporary in nature; (2) it would be unduly burdensome to account for payments for 2020 and 2021 and then reduce the income calculations when they payments ended; and (3) the payments were comparable to a public assistance payment "designed to minimize the impact of the COVID pandemic" and "cover lost income and the basic necessities eroded during the economic shut down." Order, 6/17/21, at 3

Following our review, we discern no merit to Father's argument that the COVID stimulus payments, as a whole, are comparable to a child tax credit. Further, Father has not demonstrated an error in the trial court's decision to consider the COVID stimulus payment as temporary government assistance.[8] Accordingly, we conclude that Father has not established an abuse of discretion or error of law by the trial court in its refusal to treat those payments

---

[8] Additionally, because the support guidelines use monthly gross and net income, *see* Pa.R.C.P. 1910.16-2(a), Father has not demonstrated that the inclusion of the COVID stimulus payments in 2020 and 2021 in an average of a period of at least six months would result in a meaningful change in the calculations of gross or net income, the child's basic support needs, or the shares Father and Mother owed toward that support.

as income under Rule 1910.16-2.[9]  ***See M.E.W.***, 240 A.3d at 634.  For these reasons, no relief is due and we affirm the trial court's orders.

Order affirmed.

Judge Colins joins the memorandum.

Judge Bowes files a dissenting memorandum.

_____

[9] The dissent posits that: "[T]he statutory framework expressly defines the disbursements as advanced payments of income tax credits that were created by amending Section 6428 of the Internal Revenue Code. See CARES Act of 2020, Pub.L.No 116-136, § 2201 (a) and (f), 134 Stat. 281, 335-37; Consolidated Appropriations Act of 2021, Pub.L.No. 116-260, § 272 (a) and (f), 134 Stat. 1182, 1965-66; American Rescue Plan, Pub.L.No. 117-2, § 9601 (a) and (g), 135 Stat. 4, 138-40." Dissenting Mem. at 2.  However, the dissent continues and explains that income tax refunds are income under the child support guidelines.  ***Id.*** at 3.  Although one may impact the other, it is axiomatic that tax credits and tax refunds are not synonymous.  ***See, e.g., City of Philadelphia v. City of Philadelphia Tax Review Bd. ex rel. Keystone Health Plan East, Inc.***, 132 A.3d 946, 953 (Pa. 2015) (explaining that tax credits and tax refunds are not the same thing: "Store credit is not the same as your money back.").  Additionally, the dissent states that it would not "ignore the express statutory definition of income" but then proceeds to graft the term "tax credit" onto the definition of income in 23 Pa.C.S. § 4302. Dissenting Mem. at 4.  Further, "tax credit" appears nowhere in that statute. Moreover, the only discussion of tax returns in this record is with respect to 2019, but the tax returns themselves do not appear in the record. Additionally, the amount of a "tax refund" or "tax credit" for 2020 or 2021 are not in the record, and the trial court could not have discerned the complete picture of tax credits or possible income tax refunds for all of the stimulus monies received without having this information.  We point out that we are not concluding that stimulus payments can never be considered income, only that the trial court did not abuse its discretion in the instant case because the tax information discussed by the dissent is not in the record.  Accordingly, on this record and under these circumstances, we disagree with the dissent that the trial court abused its discretion when it declined to include the stimulus payments received by the parties as income in its determination of child support.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/24/2022