561 A.2d 802

**Janet D. ROBERTS, Appellant,**

**v.**

**Edward P. FURST.**

Superior Court of Pennsylvania.

Argued April 19, 1989.

Filed July 17, 1989.

Andrew B. Brown, York, for appellant.

Douglas R. Bare, York, for appellee.

Before ROWLEY, POPOVICH and JOHNSON, JJ.

ROWLEY, Judge:

The parties to this appeal, appellant Janet Roberts ("Mother") and appellee Edward Furst ("Father"), were divorced in 1973. They are the parents of Charlotte, born December 11, 1970, and Jennifer, born March 2, 1973. The children reside with Mother, her present husband, Garry Roberts ("Roberts"), and two children born to Mother and Roberts. Father paid child support to Mother until March 15, 1978, when Father, Mother, and Roberts entered into an agreement releasing Father from any further child support obligation in exchange for Father's payment of $9,000.00 to Mother and Roberts. The agreement specifically provides that Mother and Roberts will provide support and maintenance for the children in lieu of Father's support and that they will execute a judgment note in the amount of $9,000.00 as security for Mother's promise not to make any further claim for support against Father.

All concerned abided by the agreement until March 21, 1988, when Mother filed a complaint for child support against Father. In an order entered May 10, 1988, Father was ordered to pay child support of $95.00 per week. The case was certified as complex and a hearing was held, following which, on October 14, 1988, the trial court entered an order reversing the order of support and dismissing Mother's complaint.

In this timely appeal of the October 14, 1988, order, Mother contends that the agreement signed in 1978 violates public policy and the principle of law, set forth in *Miesen v. Frank*, 361 Pa.Super. 204, 208, 522 A.2d 85, 87 (1987), that a parent cannot contract away a minor child's right to adequate support from the other parent. In addition, she asserts that the agreement was executed as a result of undue influence, coercion, and overreaching on the part of Father and his counsel. Mother asks this Court to find the agreement null and void and to reinstate the support order

of $95.00 per week, retroactive to October 14, 1988. We affirm the order of the trial court.

■ Regarding Mother's first claim, we note that in *Miesen v. Frank, supra,* appellee/mother agreed to be *solely* responsible for the support of the parties' children and to indemnify appellant/father for any amount of support ever claimed by the children against him. The present case, in which Roberts as well as Mother has taken on the responsibility of supporting the children, is factually similar to *Commonwealth v. Cameron,* 197 Pa.Super. 403, 179 A.2d 270 (1962). In that case, mother and father were divorced, mother remarried, and mother and her husband entered into a written agreement releasing father from liability for support and expressing mother's husband's willingness to assume parental duties. This Court upheld the trial court's refusal to impose a support obligation upon father, explaining that although one parent cannot bargain away a child's right to adequate support from the other, an agreement in which one parent releases the other from the duty of support will be enforced so long as it is fair and reasonable, was made without fraud or coercion, and does not prejudice the welfare of the children involved. *Id.,* 197 Pa.Superior Ct. at 406, 179 A.2d at 272. We decline to find, as Mother urges us to do, that this Court's holding in *Cameron* is outdated and/or has been implicitly overruled by *Miesen v. Frank.*

As the trial court points out, Mother and Roberts "have a total gross income of $54,000–$58,000 per year, and are financially able to support the two children" (Trial Court Opinion at 5). Mother testified that after releasing Father from his support obligation, she and Roberts, with some help from her parents, have been able to meet the children's needs (N.T. at 13). Asked why she filed the support action against Father, she testified as follows:

A: In all honesty, I never realized how much it costs to raise kids. Prices have gone up. You just don't realize all the incidentals. And talking with other people, they said the agreement—nobody ever heard of an agree-

ment like that and you should check with a lawyer. So, that's what I did, to see what could be done.

(N.T. at 53–54). Subsequently the court asked the following questions of Mother:

Q: The children have been supported for the past ten years, have they not?

A: Yes.

Q: And that is by you and Mr. Roberts and it has nothing to do with Mr. Furst, he hasn't supported the girls for the past ten years, has he?

A: No.

. . . . .

Q: Has something changed in the past ten years that has resulted in you and your current husband being unable to support the girls?

A: Not unable, but with the addition of two children and the cost of living—

Q: How old are your other two children?

A: Garry is 9 and Jessica is 11.

. . . . .

Q: Why was it that you did not file for support when those children were born?

A: Because I thought this was a valid document and Ed [Father] said he'd take our house if we did and the document looks like it reads that way.

Q: Is it my understanding that the reason you have filed for support is that the agreement . . . according to your information, is not a valid document?

A: There's a possibility that it is not. That's what I was trying to find out.

Q: Although it may be, if I can, for lack of a better term, tight for you and your current husband in supporting the two children if you're not awarded a support Order, you will still be able to support them. Is that correct?

A: That [sic] will have a roof over their head and food. I mean, they're not going to have—we can't afford to do

things like Charlotte's car insurance and things like that for her to drive, extra things like that.

Q: That's my question. Without the support Order, you cannot provide extras for your daughters?

A: Absolutely not.

Q: You can provide the means to support them, however?

A: I would make sure I did.

(N.T. at 62–64.) Roberts testified that he and Mother were having trouble making ends meet, were financially "strapped," and were unable to save money for the children's college education, but he also stated that "[w]e're not poor" (N.T. at 68–70). Accordingly, given the facts now of record, we agree with the trial court that Father "is relieved from his obligation *at the present time* to support Charlotte and Jennifer" (Trial Court Order at 4; emphasis added). If, in the future, Mother and Roberts become incapable of supporting the children, Father's obligation to contribute to their support, as the trial court recognizes, will resume.[1]

■ Mother's second claim is that Father and his counsel engaged in undue influence, coercion, and overreaching in connection with the execution of the agreement. Regarding her signing of the agreement, however, Mother testified that "it wasn't a hostile atmosphere" (N.T. at 47) and "[i]t was relaxed" (N.T. at 55). Although she asserts in this appeal that Father's lawyer "threatened [her] that if she failed to sign she would risk receiving no child support as [Father] would flee the state" (Brief for Appellant at 25), her actual testimony, when asked what Father's lawyer said to her, was:

1. We note that although Father's brief and the trial court's opinion give the birth date of the parties' older daughter, Charlotte, as December 11, 1971, the certified record indicates that it is in fact December 11, 1970, and Charlotte is now eighteen. In Pennsylvania a parent may be obligated to support a child who is eighteen or older if the child 1) wishes to obtain a college education or 2) is unable, due to a physical or mental defect, to support himself or herself. *Griffin v. Griffin*, 384 Pa.Super. 188, 194, 558 A.2d 75, 78.

A: When I hesitated, it was not a coercive tone, it was a matter of fact statement, he could die or he could run, he could leave the state, run. And Ed [Father] just stood there ... nodding his head. Nobody screamed, nothing like that.

(N.T. at 61.) Mother also directs our attention to the statement in *Millstein v. Millstein*, 311 Pa.Super. 495, 457 A.2d 1291 (1983), regarding a separation agreement establishing appellant's child support obligation, that "there is no suggestion that the separation agreement is one-sided, or that in entering into it, appellant was uncounseled, or that the [amount of] child support provided in the separation agreement is inadequate." *Id.*, 311 Pa.Superior Ct. at 507, 457 A.2d at 1297. In the present case, Mother asserts that she and Roberts entered into the agreement, drawn up by Father's lawyer, without benefit of counsel; that she had not retained counsel because Father had told her that she did not need to do so; and that when "I mentioned maybe I ought to have a lawyer look at this" (N.T. at 48), Father's lawyer called in another lawyer from the same firm who "flipped through [the agreement] and said it was fine" (N.T. at 48). Mother also testified, however, that she asked some questions of Father's lawyer, that the second lawyer was an acquaintance of her parents, and that she trusted his judgment (N.T. at 48–49, 56). We note that although Mother "still had reservations" at the time she signed the agreement (N.T. at 56), she and Roberts did not seek legal advice in the interim between her signing of the agreement and Roberts' subsequent signing of it within the next several days. In addition, she and Roberts had sufficient confidence in Father's lawyer to retain him to represent them in the purchase of their home. Having reviewed the record and the arguments of the parties, we cannot say that the trial court abused its discretion in finding that Mother failed to prove her allegations of undue influence, coercion, and overreaching.

Order affirmed.