J-A04020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM F. NADOLSKY III | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JENNIFER J. NADOLSKY | : | |
| | : | |
| Appellant | : | No. 834 MDA 2017 |

Appeal from the Order Entered April 21, 2017
In the Court of Common Pleas of Centre County Civil Division at No(s):
2013-275

BEFORE: STABILE, J., NICHOLS, J., and RANSOM, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED MAY 18, 2018**

Appellant Jennifer J. Nadolsky (Wife) appeals from the order granting the petition of Appellee William F. Nadolsky III (Husband) to enforce a court-approved agreement.  Wife raises several claims, in most part claiming that the agreement is invalid as it is based on material representations of assets and debts made by Husband.  We affirm.

The parties married on September 15, 1990.  During the course of their marriage they had five children.  On January 24, 2013, Husband filed a complaint in divorce claiming that marriage was irretrievably broken,[1] seeking joint legal custody and primary physical custody of the minors, and stating that the parties had not been able to reach an agreement on equitable distribution.  Compl., 1/24/13.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 23 Pa.C.S. § 3301(d).

On January 25, 2013, Husband filed an emergency petition for special relief, claiming that he had located a "new home for the parties' children" but that he would have to "obtain a bridge loan of $ 135,000[] in both his and [Wife]'s names . . . which will pay off the parties' existing mortgage with Norwest Savings Bank on [Husband]'s home."[2] Emergency Pet. for Special Relief, 1/25/13, at ¶ 6. The trial court held a hearing on Husband's petition on February 15, 2013. On that same day, the court granted Husband's emergency petition.[3]

On April 10, 2013, the trial court held a custody conference, and entered an order granting primary physical custody of the minor children to Husband, and shared legal custody to the parties. Trial Ct. Order, 4/10/13.

On June 6, 2014, the trial court entered an order granting Wife's counsel's oral motion to withdraw. On June 17, 2014, new counsel entered her appearance on Wife's behalf.

---

[2] Husband stated that the bridge loan would also pay off the parties' credit card debt in the amount of $15,237, the automobile loan for the vehicle driven by the parties' [oldest] son in the amount of $14,073, Husband's automobile loan for his personal vehicle in the amount of $4,016. Emergency Pet. for Special Relief, 1/25/13, at ¶ 6. The remainder of the loan—$70,752—would be used as a down-payment for the new home. *Id.*

[3] On May 8, 2014, Husband filed another Petition for Special Relief requesting an extension of the bridge loan to avoid the initiation of mortgage foreclosure proceedings on the former marital residence, which had not yet been sold. Pet. for Special Relief, 5/8/14, at ¶ 9. On May 19, 2014, the trial court's granted Husband's petition, it stated that the bridge loan was in the amount of $135,248. Trial Ct. Order, 5/19/14.

Wife filed an answer with new matter on June 17, 2014, wherein she claimed different grounds for divorce,[4] and requested primary physical custody of the children, spousal support, alimony *pendente lite*, and counsel fees and costs.  Answer and New Matter, 6/17/14.

The trial court held a conference regarding all economic matters and, on July 10, 2014, entered an order requesting that inventories be submitted on or before September 16, 2014.  The court scheduled an equitable distribution hearing for October 1, 2014.

Wife thereafter filed a praecipe to schedule a custody conference, which the trial court scheduled for September 3, 2014.  On September 4, 2014, the court entered an order stating that an agreement had been reached at the conference and that "an agreed upon order shall be submitted to the [c]ourt by counsel within ten (10) days of this date."  Trial Ct. Order, 9/4/14.  The parties, however, did not comply.

On September 29, 2014, Husband filed another emergency petition for special relief requesting that the court order Wife to complete the documents

---

[4] Wife claimed the ground for divorce should be pursuant to subsections 3301(a)(3) and (a)(6) of the Divorce Code.  **See** 23 Pa.C.S. § 3301(a)(3) ("The court may grant a divorce to the innocent and injured spouse whenever it is judged that the other spouse has . . . [b]y cruel and barbarous treatment, endangered the life or health of the injured and innocent spouse."); 23 Pa.C.S. § 3301(a)(6) ("The court may grant a divorce to the innocent and injured spouse whenever it is judged that the other spouse has . . . [o]ffered such indignities to the innocent and injured spouse as to render that spouse's condition intolerable and life burdensome.").

necessary for the sale of the marital residence. Following a scheduled hearing, which Wife did not attend, the court entered an order granting Husband's petition. Trial Ct. Order, 9/30/14.

Several months later, on February 25, 2015, the trial court "upon agreement of the parties and stipulation by their counsel," entered a custody order that Husband and Wife have joint legal custody of the four minor children,[5] with Husband having primary physical custody. Trial Ct. Order, 2/25/15. The order further stated that Wife would have temporary physical custody of the two youngest children. *Id.*

On October 26, 2015, Wife filed a petition for contempt arguing that Father was not complying with the February 25, 2015 custody order. On December 2, 2015, following a conference, the trial court entered an order suspending the February 25, 2015 order, granting Wife certain periods of time with the two youngest children, and directing Father to provide transportation. The court scheduled a February 17, 2016 hearing regarding custody and Wife's petition for contempt. Following that hearing, the court held Wife's petition for contempt in abeyance. Trial Ct. Order, 2/22/16.

On February 23, 2016, the trial court entered a custody order stating that Husband and Wife would have joint legal custody of the three minor

---

[5] The oldest child was twenty-three years of age at the time of the entry of the February 25, 2015 custody order.

children[6] and that Husband would have primary physical custody, with Wife having temporary physical custody of the two youngest children. Trial Ct. Order, 2/23/16.

The equitable distribution hearing, which was continued several times, was held on October 5, 2016. Immediately before the hearing, Husband filed his Inventory and Expense Statement. Wife did not file an Inventory and Expense Statement. However, the parties indicated they had reached an agreement. N.T., 10/5/16, at 2. Counsel for Wife stated that she shared Husband's Inventory and Expense Statement with Wife and reviewed some documents Wife had provided to counsel. Counsel for Wife stated that "[Wife] finds this acceptable." *Id.* at 2, 4-5. Neither the parties nor the court objected to Wife's failure to file her Inventory and Expense Statement at or prior to the hearing.

The parties' counsel memorialized the terms of their agreement at the hearing as follows. Husband was to retain (1) sole ownership of his house and lot; (2) all remaining debts and liabilities incurred in the purchase and maintenance of this house; (3) all of his personal property; (4) all of the net sales proceeds from the sale of the parties' former marital residence; (5) one-half of the proceeds from the sale of the 2001 Pontiac Grand Am sedan; and (6) all other accounts, investments, life insurance policies, automobiles, and

---

[6] The parties' second child had turned eighteen years of age at the time of the February 23, 2016 custody order.

assets in his name. Trial Ct. Order, 4/21/17, at ¶¶ 1-2.[7] Husband was also to be responsible for the following debts: (1) the parties' obligations to Mortgage Settlement Services for the sale of former marital residence; (2) Chase Bank Visa; (3) Penn State Federal Credit Union for the parties' oldest son's automobile loan; (4) M&T Bank; (5) Capital One; (6) Dick's Sporting Goods; (7) Credit One Bank; (8) MCM Lowe's; (9) the 2013 county/municipal real estate taxes; (10) the 2013 and 2014 school district real estate taxes; (11) Thomas W. Fisher for septic system repairs to marital residence; (12) Northwest Bank; and (13) material purchased to repair marital residence in preparation for sale. *Id.* at ¶ 3.

Wife was to retain (1) all of her personal property; (2) one-half of the proceeds from the sale of the 2001 Pontiac Grand Am sedan; (3) the 2007 Dodge Grand Caravan van; (4) her retirement benefits with Capital Health Products; and (5) all accounts, 401(k) plans, individual retirement accounts, pension benefits life insurance policies, automobiles, and other assets in her name. *Id.* at ¶ 4. Wife was also to receive "all of [Husband]'s retirement benefits with Murata Electronics, N.A., Employees' PS Retirement Plan . . . through October 3, 2016, and all of his retirement benefits from Restek Corporation through October 3, 2016." *Id.* at ¶ 5(A). Further, Wife was to receive a monthly payment of $200 commencing on November 1, 2016, until

---

[7] Although the terms of the agreement were memorialized in the October 5, 2016 hearing, the trial court concisely set forth the terms in its April 21, 2017 order.

October 31, 2021, as part of the equitable distribution of the property. *Id.* at ¶ 5(B).

Finally, the Agreement provided that Husband would "[w]aive all rights to the child support owed to [Husband] by [Wife] pursuant to [the trial court's order] dated June 22, 2015 . . . for the period from October 1, 2016, through September 30, 2018." *Id.* at ¶ 5(C). After these two years, Father would "go back and file for support." N.T., 10/5/16, at 3. The Agreement added that if Husband was to seek and receive child support from Wife during the aforementioned two-year period, "then any money paid by [Wife] shall be reimbursed to her by [Husband] through a continuation of the [monthly $200 payments] until all payments made by [Wife] for child support during the said period are repaid to [Wife] in full." *Id.*

The parties, who were under oath at the hearing, "assented to the terms of the agreement," and stated that "they did not have any other assets or liabilities not disclosed." N.T., 10/5/16, at 10. The parties asserted that they were willing to abide by the terms of the agreement.[8] *Id.* The trial court did not enter an order at this time.

---

[8] At the hearing, Husband testified to the following:

[COURT]. You have heard what's been stated here today?

[HUSBAND]. Yes, I have.

Q. Is that your understanding of the agreement?

On January 4, 2017, Husband filed a petition for enforcement of the agreement. According to Husband, he sent to Wife's counsel a proposed order setting forth the terms of the agreement memorialized at the October 5, 2016 hearing. However, Wife did not approve the proposed order and refused to abide by the terms of the agreement.

On April 10, 2017, Wife, through new counsel, filed an answer to

---

A. Yes.

Q. And you're willing to abide by the agreement?

A. Yes, I am.

Q. And do you have any other assets or liabilities not disclosed to [Wife]?

A. No, I don't.

Similarly, Wife testified to the following:

[COURT]. And did you hear what was presented here today?

[WIFE]. I did.

Q. Are you -- is that your understanding of the agreement?

A. Yes.

Q. Do you have any other assets or liabilities that have not been disclosed to the other party?

A. Unless they're through [Husband], no.

N.T., 10/5/16, at 10.

Husband's petition for enforcement of the court-approved agreement.[9] In her answer, Wife raised several defenses, including that prior counsel: "negotiated with attorney for [Husband] with little or no input from [Wife];" told Wife that "either she sign the proposed agreement or [prior counsel] would walk out and leave [her] alone to defend herself;" and did not file "an inventory and appraisement or expense statement" on her behalf. Answer to Husband's Pet. for Enforcement of Ct.-Approved Agreement, 4/10/17, at ¶ 6. Wife further averred that the agreement was based on material misrepresentations by Husband, that she was never in agreement with the terms of the settlement, and that she "was crying throughout the proceeding and did not understand the terms to which she was agreeing." *Id.* at ¶ 6, 7.

On April 21, 2017, following oral arguments, the trial court entered an order granting Husband's petition to enforce the agreement. Trial Ct. Order, 4/21/17, at 1. The order further set forth the terms of the October 5, 2016 agreement. *Id.* at 1-6. That same day, the trial court entered a decree in divorce.

Wife timely filed her notice of appeal. Wife and the trial court have complied with Pa.R.A.P. 1925.[10]

---

[9] The delay in Wife's Answer appears to be due to Wife's prior counsel withdrawing from representation and Wife retaining new counsel.

[10] Wife included the following issues in her Pa.R.A.P. 1925(b) statement:

Wife raises four issues on appeal, which we have reordered as follows:

1. Whether the trial court erred by not questioning Appellant's counsel as to why she did not file an inventory prior to the hearing on equitable distribution.

2. Whether the trial court erred by allowing Appellant to be threatened and forced into a settlement agreement by her counsel when Appellant had not seen Appellee's inventory and expense statement.

3. Whether the trial court erred by allowing an agreement based only on the inventory and expense statement filed by Appellee on the day of the equitable distribution hearing when in fact Appellee's figures materially misrepresented the amount of assets and debts subject to equitable distribution.

4. Whether the trial court erred by enforcing a court-approved agreement when the agreement was based on the material misrepresentation of assets and debts by Appellee and the

_____

1. The trial court erred by not questioning [Wife]'s counsel as to why she did not file an inventory and expense statement prior to the hearing on equitable distribution.

2. The trial court erred by allowing an agreement based only [on] the Inventory and Expense Statement filed by [Husband] on the day of the equitable distribution hearing when in fact [Husband]'s figures materially misrepresented the amount of assets and debts subject to equitable distribution.

3. The trial court erred by allowing [Wife] to be threatened and forced into a settlement agreement by her counsel when [Wife] had not seen [Husband]'s Inventory and Expense Statement.

4. The trial court erred by enforcing a court-approved agreement when the agreement was based on the material misrepresentation of assets and debts by [Husband] and the agreement included illegal terms, including, but not limited to the waiver of child support by [Husband].

Statement of Matters Complained of on Appeal, 6/16/17 (some capitalization omitted).

agreement included illegal terms, including but not limited to the waiver of child support by Appellee.

Wife's Brief at 4-5 (full capitalization omitted).

"The determination of marital property rights through . . . settlement agreements has long been permitted, and even encouraged." *Holz v. Holz*, 850 A.2d 751, 757 (Pa. Super. 2004) (citation omitted). Further, "a court's order upholding the agreement in divorce proceedings is subject to an abuse of discretion or error of law standard of review." *Id.* (citation omitted).

In support of Wife's initial issue, she raises two separate arguments. First, she argues that the trial court erred in ordering the parties to file inventories on September 16, 2014, fifteen days prior to the scheduled equitable distribution hearing. She cites to Pa.R.C.P. 1920.33(a), which states that "[a] party may not file a motion for the appointment of a master or a request for court action regarding equitable division until at least 30 days following the filing of that party's inventory." Wife's Brief at 12 (citing Pa.R.C.P. 1920.33). Wife also cites to 23 Pa.C.S. § 3505(b)(3), for the proposition that both parties shall submit to the court an inventory and appraisement, containing "[a] list of the liabilities of either or both of them as of 30 days prior to the date of hearing on equitable distribution, whether or not the liabilities are related to the property set forth in the inventory and appraisement." *Id.* at 13 (citing 23 Pa.C.S. § 3505(b)(3)). Wife's argument on this point comprises four out of the five pages of her appellate brief devoted to her first issue.

Second, Wife argues that the trial court erred by not questioning her as to why she had not filed an inventory. Wife's entire argument on this point consists of the following:

[W]hy was counsel for the Appellant not questioned by the trial court as to why she did not file an inventory and appraisement having two (2) years to do so? Furthermore, how can the parties enter meaningful negotiations on the day set aside for the hearing with only one side having filed any paperwork? The trial court should have questioned both counsel at the onset of the hearing and cancelled the hearing when it was clear that both parties had failed to follow the trial court's order by not providing timely inventories and appraisements.

Wife's Brief at 15.

As a prefatory matter, we must determine whether Wife has preserved this issue. Any "[i]ssues not included in the [Rule 1925(b) s]tatement . . . are waived." Pa.R.A.P. 1925(b)(vii); *see Barton v. Lowe's Home Centers, Inc.*, 124 A.3d 349, 356 n.4 (finding that the appellant "waived []his issue by failing to raise it in his Pa.R.A.P. 1925(b) statement" (citation omitted)).

In her Rule 1925(b) statement, Wife's stated, in relevant part, that "the trial court erred by not questioning [Wife]'s counsel as to why she did not file an inventory and expense statement prior to the hearing on equitable distribution." Statement of Matters Complained of on Appeal, 6/16/17 (some capitalization omitted). In the argument section for Wife's first issue, however, she dedicated four out of five pages to arguing that the trial court erred in scheduling the equitable distribution hearing fourteen days after the inventory and expense statements were due. Appellant did not include this

issue in her Rule 1925(b) statement, nor is it a "subsidiary issue contained therein which was raised in the trial court. *See* Pa.R.A.P. 1925(b)(vi), (vii). Therefore, we find Wife's first argument of her initial issue waived. *See* Pa.R.A.P. 1925(b)(vii); *Barton*, 124 A.3d at 356 n.4

Turning to Wife's second argument in support of her initial issue, we note that Rule 2119 of the Pennsylvania Rules of Appellate Procedure states that an argument section be composed of discussion and citations to relevant authority. Pa.R.A.P. 2119. Failure to develop an argument constitutes waiver. *See Burgoyne v. Pinecrest Community Assoc.*, 924 A.2d 675, 680 n.4 (Pa. Super. 2007). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." *Bombar v. West American Ins. Co.*, 932 A.2d 78, 93 (Pa. Super. 2007) (citation omitted).

Here, Wife's one-paragraph argument fails to explain how the trial court had a duty to ask her why she had still not filed an inventory and expense statement despite having approximately two years to do so. Further, Wife cites to no authority that shows that the trial court has an obligation to make such inquiries. In fact, Wife cites to no law whatsoever in support of her argument. Therefore, we also find this second argument waived. *See* Pa.R.A.P. 2119; *Burgoyne*, 924 A.2d at 680 n.4. Accordingly, we decline to consider further Mother's first issue in this appeal.

For Wife's second issue, she argues that she entered into the October 5, 2016 settlement agreement by duress because her prior counsel

- 13 -

"threatened to leave her to conduct the equitable distribution hearing by herself if she did not agree with the proposal of [Husband]." Wife's Brief at 25. She claims that "[her] argument is corroborated by the fact that prior counsel . . . indicated in a transcript of the proceeding that [Wife] was very upset[,] was sobbing throughout the proceeding and was unsure as to what she was agreeing." *Id.* at 25-26.

This Court has previously explained that "settlement agreements are governed by the same rules of law as . . . contracts." *Adams v. Adams*, 848 A.2d 991, 993 (Pa. Super. 2004) (citation omitted). Thus, "[a]bsent fraud, misrepresentation, or duress, parties are generally bound by the terms of their agreements." *Id.* (citation omitted). We have defined "duress" as "that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness." *Id.* (citation omitted). "[T]he mere fact [that an] appellant [i]s faced with stress and anxiety resulting from her divorce proceedings does not establish duress in the legal sense." *Id.*

We agree with the trial court's reasoning stating that "[Wife] was emotional at the time the settlement agreement was reached, but she had friends with her who offered emotional support and she spent a significant amount of time discussing the settlement with her attorney." Trial Ct. Op. at 4; *see* N.T., 10/5/16, at 2, 4-5. Further, "[Wife]'s attorney stated on the record that she shared [Husband]'s Inventory and Expense Statement with

[Wife], and the details of the settlement agreement were recited on the record while [Wife] was present." Trial Ct. Op. at 4*.*; *see* N.T., 10/5/16, at 4-5. Additionally, Wife stated on the record that the agreement as stated at the hearing was her understanding of the terms of the agreement previously discussed and that she was "willing to abide by that agreement." N.T., 10/5/16, at 10. Although during the settlement agreement hearing, Wife's counsel indicated that Wife was "upset," this is not sufficient to establish duress required to invalidate a valid settlement agreement. *See Adams*, 848 A.2d at 994. Thus, we find that the trial court committed no abuse of discretion or error of law.

Wife's last two issues relate to the validity of the agreement. In support of Wife's third issue, she argues that the inventory filed by Husband on the morning of the scheduled equitable distribution hearing was misleading and contained material misrepresentations of assets and debts. Wife's Brief at 16. Wife recites the procedural history of this case and takes issue with the down payment of Husband's new residence, which was 38% of the purchase price for the new residence and was paid with the bridge loan. *Id.* at 18. She claims that this "should have raised a red flag with the trial court, but didn't." *Id.*

Wife also claims that Husband did not provide any supporting evidence for the value of the parties' assets. *Id.* Further, she argues that Husband's "portrayal of the marital estate at the equitable distribution hearing when

- 15 -

looked at comparison with his past representations to the trial court was nothing short of fraud." Wife's Brief at 23. Thus, Wife concludes, Husband "committed extrinsic fraud against [her] through his manipulation of the marital estate." *Id.* at 24.

As discussed above, "settlement agreements are governed by the same rules of law as . . . contracts." *Adams*, 848 A.2d at 994. "Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." *Simeone v. Simeone*, 581 A.2d 162, 165 (Pa. 1990). The *Simeone* Court explained that "[i]f an agreement provides that full disclosure has been made, a presumption of full disclosure arises" and "[i]f a spouse attempts to rebut this presumption through an assertion of fraud or misrepresentation[,] then this presumption can be rebutted if it is proven by clear and convincing evidence."[11] *Id.*; *see Bennett v. Bennett*, 168 A.3d 238, 245 (Pa. Super. 2017). Additionally, this Court has stated that "an agreement is valid even if it does not contain financial disclosure itself and can be upheld if it merely recites that such disclosure has been made." *Paroly v. Paroly*, 876 A.2d 1061, 1066 (Pa. Super. 2005). "[A] full and fair disclosure in the property settlement agreement merely requires sufficient disclosure to

---

[11] We acknowledge that Wife did not request an evidentiary hearing in response to Husband's Petition to Enforce. Additionally, Wife on appeal does not claim that the trial court erred by not holding an evidentiary hearing.

allow the intended party to make an informed decision." ***Bennett***, 168 A.3d at 245-46 (citation omitted).

Here, the trial court found that:

[Wife]'s former [c]ounsel stated she shared [Husband]'s Inventory and Expense Statement with [Wife] and reviewed documents from [Wife]. [Wife] freely entered into the settlement agreement, and the agreement gave a full and fair disclosure of the marital assets. [Wife] did not object to these figures at the time she agreed to the settlement agreement. Under oath, both parties were asked whether they had any other assets or liabilities not disclosed, and both stated that they did not. [Wife] had the opportunity to review the figures presented in the settlement agreement, present her own, and have a hearing instead of signing the settlement agreement. Additionally, the figures in the settlement agreement are not based solely on the assets and debts presented in [Husband]'s Inventory and Expense Statement. The figures were agreed to by both parties after extensive negotiations.

Trial Ct. Op. at 3. We agree with the court's reasoning.

Moreover, Wife has not shown what part of Husband's Inventory and Expense Statement was misleading or fraudulent. Although Wife claims that the down-payment of 38% of the purchase price paid with the bridge loan should have raised a red flag, she does not explain why it should have raised a red flag or what was misleading or fraudulent about the transaction.[12] As stated by the trial court, Wife had an opportunity to review this document with

_____

[12] Moreover, even if we were to accept Wife's argument that Husband was misleading or fraudulent regarding the down-payment of 38% of the purchase price of Husband's new home, we would point out that all this information was disclosed in Husband's several petitions for special relief. ***See*** Emergency Petition for Special Relief, 1/25/13, at 2-3 ¶ 6; ***see also*** Petition for Special Relief, 5/8/14, at 2-3 ¶¶ 6, 7, 9; Emergency Petition for Special Relief, 9/29/14, at 2-3 ¶¶ 6, 7, 8. Accordingly, Wife's argument fails.

counsel. *Id.* Further, Wife had over two years to file an inventory of her own, but elected not to do so. *Id.*

As for Wife's claim that Husband did not provide any supporting evidence for the value of the parties' assets, she stated under oath that she heard and agreed that what was stated at the hearing was her understanding of the agreement and that she was willing to abide by it. *See* N.T., 10/5/16, at 10. Additionally, both Husband and Wife stated that there were no other assets or liabilities that had not been disclosed to the other party. *Id.* at 10. Therefore, we can glean no abuse of discretion from the court's upholding of the settlement agreement. *See Simeone*, 581 A.2d at 165; *Bennett*, 168 A.3d at 245.

For her fourth issue, Wife argues that the trial court erred in enforcing the agreement because it included an illegal term. She claims that the agreement contained a waiver of child support by Wife from October 1, 2016 to September 30, 2018. She further claims that "although this term is in her favor, it is illegal under 23 Pa.C.S. § 4300 *et seq*[.], because child support is for the care of the children and cannot be waived as part of a property settlement agreement." Wife's Brief at 28.

When determining child support, a marital settlement agreement that leaves "the children without sufficient support" is invalid. *Kraisinger v. Kraisinger*, 928 A.2d 333, 341 (Pa. Super. 2007). However, "an agreement in which one parent releases the other from the duty of support will be

enforced so long as it is fair and reasonable, was made without fraud or coercion, and does not prejudice the welfare of the children involved." **Id.** (citing **Roberts v. Furst**, 561 A.2d 802, 803 (Pa. Super. 1989)).

The child support provision in the Agreement provided that Wife would "[w]aive all rights to the child support owed to [Husband] . . . for the period from October 1, 2016, through September 30, 2018." Trial Ct. Order, 4/21/17, at ¶ 5(C). The Agreement further added that if Husband was to seek and receive child support from Wife during the aforementioned two-year period, "then any money paid by [Wife] shall be reimbursed to her by [Husband] through a continuation of the [monthly $200 payments] until all payments made by [Wife] for child support during the said period are repaid to [Wife] in full." **Id.**

As the trial court stated, the waiver of "child support payments is for two years, at which point [Husband] is free to file for child support." Trial Op. at 5; **see** Trial Ct. Order, 4/21/17, at ¶ 5(C). At the time of the agreement, Husband was capable of supporting the children without Wife's assistance and without prejudice to the children. Trial Ct. Op. at 5. Furthermore, the child support provision of the Agreement allows for Husband to seek child support from Wife should he need to do so. Trial Ct. Order, 4/21/17, at ¶ 5(C). Accordingly, because we agree with the trial court that the child support provision is fair and reasonable, and does not prejudice the welfare of the

children, we conclude the trial court did not abuse its discretion.  ***See***

***Kraisinger***, 928 A.2d at 340; ***Roberts***, 561 A.2d at 803.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/18/18