J-A25002-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| K.I.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.K.G. | : | No. 2110 MDA 2019 |
| v. | : | |
| | : | |
| | : | |
| | : | |
| K.I.G. | : | |
| | : | |
| | : | |
| Appellant | : | |

Appeal from the Order Entered December 3, 2019
In the Court of Common Pleas of Berks County Domestic Relations at
No(s):  2010-67321,
2010-67321R, PACSES 258116945,
PACSES 534111202

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 18, 2021**

K.I.G. ("Mother") appeals from the December 3, 2019 child support order, which, *inter alia,* rendered unenforceable the provision of the parties' May 18, 2012 stipulated agreement that provided for reinstatement of the April 26, 2012 support order if J.K.G. ("Father") sought to modify custody, and established Mother's support obligation based upon earning capacity rather than actual earnings.  After thorough review, we affirm in part, vacate in part, and remand.

The parties are the parents of eight children, two of whom reached the age of majority on May 25, 2019. Beginning in the early 2000's, Mother, Father and the children produced a reality television program. After Mother and Father divorced, Mother and the children continued the television show. Compensation for their services was paid to a Subchapter "S" corporation owned by Mother and the children, which paid the family's living expenses and funded the children's educational trusts.

On April 26, 2012, the domestic relations court entered an order that set forth Father's support obligation. On May 18, 2012, the parties entered a custody stipulation ("Stipulation"), which provided in pertinent part that Mother relieved Father of his support obligation provided he did not seek to modify custody. In the event that Father sought a custody modification, the Stipulation provided that the April 26, 2012 support order would be reinstated, effective May 9, 2012, and Father also would be responsible for paying the $125,000 balance of arrears accrued prior to April 26, 2012, within six months of the reinstatement. **See** Stipulation, 5/18/12, at ¶2. The Stipulation was incorporated into the court's May 22, 2012 custody order ("Agreed Order").

Thereafter, pursuant to the Stipulation, Father paid no child support and Mother retained sole legal and physical custody of the children. On October 20, 2017, Father filed a petition to modify custody, and he was awarded shared legal custody of the minor children on December 28, 2017. On January 10, 2018, Mother filed a complaint seeking reinstatement and enforcement of

the April 26, 2012 support order, pursuant to the terms of the Stipulation and the Agreed Order. She also sought child support from Father for the support of all eight children, who were living with her at the time.

On February 21, 2018, Mother and Father entered a consent order in which Mother "waived her claim for child support after 1/10/2018 without prejudice to her right to file a complaint in the future." Consent Order, 2/21/18. That same day, Father was awarded primary physical custody of one of the children, H.J.G., and filed a complaint seeking child support from Mother for her support. On December 20, 2018, Father obtained sole legal and primary physical custody of another child, C.T.G., and thereafter on January 9, 2019, Father filed another complaint seeking child support from Mother for C.T.G.'s support. On May 22, 2019, Mother filed a complaint seeking child support from Father for the four minor children remaining in Mother's custody. The various complaints were consolidated by order dated May 23, 2019.

A hearing on the outstanding petitions was held before the support hearing officer Mark J. Merolla, Esquire (the "Hearing Officer") on May 28, 2019, and he issued his findings of fact and law on July 3, 2019. The Hearing Officer found the Stipulation, which provided for the reinstatement of the April 26, 2012 support order effective May 9, 2012, and arrears totaling $125,000, unenforceable. He also found Mother's claim for child support for all eight children commencing January 10, 2018, to be waived. Finally, the Hearing

Officer assessed Mother's earning capacity at $175,541.50, and recommended that Mother be ordered to pay monthly support to Father of varying amounts for various periods commencing February 21, 2018.

Mother timely filed exceptions. A hearing on Mother's exceptions, as well as certain custody-related matters not at issue in this appeal, was held before the Honorable Timothy Rowley on November 1, 2019. The court issued a Decision and Order on December 2, 2019, which was docketed on December 3, 2019. The court largely adopted the Hearing Officer's findings and recommendations. Mother timely appealed and complied with Pa.R.A.P. 1925(b). On January 6, 2020, the trial court issued a statement in lieu of a Rule 1925(a) opinion, directing this Court to its December 3, 2019 Decision and Order, for the detailed reasons in support of the order.

Mother presents four issues for our review:

1. Did the trial court err or abuse its discretion in failing to reinstate the prior [s]upport [o]rder, dated April 26, 2012?

2. Did the trial court err or abuse its discretion in determining that Appellant waived her right to child support for the period from January 10, 2018 through May 22, 2019?

3. Did the trial court err or abuse its discretion in finding that Appellant has an earning capacity of $179,541.50?

4. Did the trial court err or abuse its discretion in finding that Appellant failed to produce documentation to support her lack of income in 2019, and that historical income information prior to 2017 was necessary to determine her current income/earning capacity?

Mother's brief at 17.

Our standard of review is as follows:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Brickus v. Dent*, 5 A.3d 1281, 1284 (Pa.Super. 2010) (citations omitted).

Furthermore, this Court

> must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand.
>
> When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, and the court is free to choose to believe all, part, or none of the evidence presented. This Court is not free to usurp the trial court's duty as the finder of fact.

*Mackay v. Mackay*, 984 A.2d 529, 533 (Pa.Super. 2009) (internal citations and quotation marks omitted).

*M.E.W. v. W.L.W.*, 240 A.3d 626, 634 (Pa.Super. 2020).

The following principles inform our review. "[P]arents have no power to 'bargain away the rights of their children,' and . . . if an agreement between parents for child support provides 'less than required or less than can be given,' courts may ignore the agreement and require a satisfactory level of support. **Huss v. Weaver**, 134 A.3d 449, 454 (Pa.Super. 2016) (quoting **Knorr v. Knorr**, 588 A.2d 503, 505 (Pa. 1991)). Phrased differently, "an agreement in which one parent releases the other from the duty of support will be enforced so long as it is fair and reasonable, was made without fraud or coercion, and does not prejudice the welfare of the children involved." **Roberts v. Furst**, 561 A.2d 802, 803 (Pa.Super.1989).

Furthermore, "[t]he court making an order of support shall at all times maintain jurisdiction of the matter for the purpose of enforcement of the order and for the purpose of increasing, decreasing, modifying or rescinding the order." 23 Pa.C.S. § 4352(a). Thus, the trial court throughout retains continuing jurisdiction to amend even the parties' agreements for support in accordance with the children's changing needs for support. **See** 23 Pa.C.S. § 4352(a) (providing that "[a]n award of support, once in effect, may be modified *via* petition at any time, provided that the petitioning party demonstrates a material and substantial change in their circumstances warranting a modification").

Mother contends first that the trial court erred in refusing to enforce the Stipulation and reinstate the April 26, 2012 support order. In the Stipulation, Mother agreed to release Father from his support obligation as determined on

April 26, 2012, provided that Father did not seek to modify legal or primary physical custody of any of the children. In the event that Father violated that condition, the previous support order would be reinstated retroactively to May 9, 2012.[1] Consequently, Father would be required to pay within ninety days all accrued child support from May 9, 2012 until the date he filed his petition to modify custody, which was October 20, 2017. In addition, Father would have six months to pay the $125,000 in arrears that had accrued prior to April 27, 2012. Mother claims the Stipulation was a valid, binding, and unambiguous contract that should have been enforced as Father violated the parties' agreement when he sought and obtained custody of two of the children.

_____

[1] Paragraph 2 of the Stipulation provided:

> In the event Father files a Petition with the Court to modify this Amended Stipulation for Entry of Agreed Custody Order and seeks reinstatement of Paragraph 9 of the November 30, 2010 Stipulation for Entry of Agreed Custody Order, or seeks a change in legal custody, or seeks joint or primary physical custody, the Support Order dated April 26, 2012[,] shall be reinstated effective May 9, 2012. Any and all arrears that would have been generated on the April 26, 2012 support Order between April 27, 2012 and the date Father files his Petition to Modify Custody shall be due and owing within ninety (90) days of the date of the filing of the Petition to Modify Custody. In addition, the arrears balance of $125,000 that was due as of April 26, 2012, shall be reinstated and Father shall be obligated to pay Mother the sum of $125,000 within six months of filing of any Petition to Modify Custody.

Stipulation, 5/18/12, at ¶2.

Although the trial court purported to analyze the enforceability of the Stipulation under the three-prong test in **Roberts**, **supra**, and applied more recently in **Kraisinger v. Kraisinger**, 928 A.2d 333 (Pa.Super. 2007), Mother alleges that the court only examined the third prong, the prejudice prong, and then focused solely on the prejudice to the two children in Father's custody if he was required to pay arrears. Mother claims that the court ignored the prejudice and harm to the other children in her custody "who will not only receive no financial support from Father, but [who] will be placed in dire economic circumstances when Mother is forced to pay monthly child support to Father based upon a theoretical earning capacity and no actual income." Mother's brief at 25.

Mother argues in the alternative that, even if the Stipulation is found to be void and unenforceable based upon unreasonableness or potential prejudice, the April 26, 2012 support order was never terminated and remains in effect. **Id**. at 27. According to Mother, Father has been accruing unpaid arrears of $1,450 per month under that order for current support, and $40.00 per month for arrears since April 26, 2012, which are due and owing.

Father does not allege that the Stipulation was unreasonable or coercive. Rather, he asserts that the trial court properly found the Stipulation unenforceable as to child support because enforcement of its penalty provision would unfairly prejudice the minor children in Father's sole physical custody. Father maintains, as the trial court found, that his gross income is not large

enough to support himself and the two children in his custody, as well as pay arrears that would have any meaningful impact on the amount Father owed Mother. Father's brief at 15. Furthermore, Father disputes Mother's representation that the trial court did not consider whether enforcement would have any prejudicial effect on the children in Mother's care from 2012 until January 10, 2018. According to Father, the court concluded that the fact that Mother did not file for support until 2018 was evidence that the children suffered no prejudice in the past. *Id*. at 16. Moreover, Father argues that Mother's withdrawal of her claim for support filed in January 2018, should be viewed as a tacit confirmation that the children were well provided for while in her care. *Id*.

Father contends further that Mother's enforcement of the support provisions in the Stipulation was intended to penalize him for seeking joint legal custody. He distinguishes the situation herein from that in *Huss*, *supra*, where an agreement providing for a $10,000 charge should the mother seek modification of agreed-upon child support was enforced because the parties acknowledged therein both their respective earning capacities and the reasonableness and fairness of the agreement. He contends that the Stipulation herein does not contain similar language or acknowledgments, and is punitive.

Father relies upon this Court's decision in *Kraisinger*, *supra*, in which we struck down a provision in a child support agreement requiring the mother

to pay the father's legal fees if she challenged the amount of child support set forth in their agreement. Although the parties' agreement specifically provided that the attorney fees provision was included to "discourage frivolous filings," *id*. at 337, we refused to "tolerate a provision which penalizes a parent for pursuing her children's rights." *Id*. at 345.

We find the Stipulation herein distinguishable from the agreements in *Kraisinger* and *Huss*. It was not only a support agreement; it was also a custody agreement that released Father from his support obligation provided he did not seek to modify Mother's custody of the children. As we held in *Huss*, *supra*, we may ignore agreements as to child support to the extent that they result in inadequate support for the children. However, such an agreement "will be enforced so long as it is fair and reasonable, was made without fraud or coercion, and does not prejudice the welfare of the children involved." *Roberts*, *supra* at 803.

Herein, the trial court found that Father's income was insufficient to support himself and two children, and that enforcement of the Stipulation would be prejudicial to the two children in his custody. Furthermore, the court found no evidence that the children in Mother's care lacked the necessary support from 2012 until May 2019, despite Mother's lack of earnings in 2019. Thus, it would appear that although Father was relieved of his duty of support for more than six years, the children did not suffer. To require Father to pay five years of accrued child support, and an additional $125,000 in arrears,

when he lacks the wherewithal to support himself and the two children in his custody, would indeed prejudice the latter two children. Hence, we find no abuse of discretion on the part of the trial court in refusing to enforce the Stipulation.

Alternatively, Mother claims that the support order of April 26, 2012 remained in full force and effect over the years. She contends that "[t]he April 26, 2012 Support Order was only terminated based on an agreement between the parties and, if said [Stipulation] is invalid, the termination is consequently also invalid." Mother's brief at 27. She maintains "Father has been accruing unpaid arrears under the April 26, 2012 Order, which arrears are due and owing." *Id*. at 28. However, Mother cites no authority authorizing the trial court to resurrect and enforce a support order that was superseded by the parties' Stipulation. Moreover, the Stipulation was deemed unenforceable, not invalid. This claim merits no relief.

Mother contends next that the trial court erred in finding that her claim for child support from January 10, 2018 through May 22, 2019 was waived. The record reveals that Mother and Father entered a consent order on February 21, 2018 (the "Consent Order"), in which Mother "waived her claim for child support after 1/10/2018 without prejudice to her right to file a complaint in the future." Consent Order, 2/21/18, at 1. Mother argues that immediately after she signed the Consent Order, "Father filed in the custody matter to terminate Mother's right to continue filming with the children,

effectively rendering Mother unemployed and leaving the children with no income and no child support." Mother's brief at 35. She urges us to apply the three-pronged test enunciated in **Roberts** to render the Consent Order unenforceable because it resulted in prejudice to the children.

Contrary to Mother's representation, the trial court did not find that the Consent Order constituted a waiver of support for that period. Rather, the court found it merely operated as a withdrawal of Mother's claim for child support for January 10, 2018 through May 22, 2019, **without prejudice** to Mother's right to file a new complaint for child support for that period.[2] Although the Consent Order contained the term "waived," we agree with the trial court that there was no prejudice as it merely withdrew the January 10, 2018 support claim and was not an impediment to Mother filing a new complaint seeking support for the children for that period. Again, we find no error or abuse of discretion.[3]

We turn now to Mother's third and fourth issues alleging that the trial court erred and abused its discretion in disregarding substantial evidence of her actual earnings that should have been used to calculate her support

---

[2] Mother did not file a new complaint for child support commencing January 10, 2018, although she could have. Rather, she filed a new complaint for child support on May 23, 2019.

[3] The trial court also found waiver because Mother supplied no documentation to facilitate the calculation of support for the time period from January 10, 2018 through May 22, 2019. In our view, the record does not support the trial court's alternative basis for finding waiver for the reasons that follow.

- 12 -

obligation commencing February 21, 2018. Mother faults the court first for imputing income to her based on earning capacity, and second, for doing so incorrectly. Specifically, Mother challenges the trial court's findings that (1) she failed to produce sufficient documentation of her lack of income in 2019; (2) historical income information prior to 2017 was necessary to determine her current income/earning capacity; and (3) her earning capacity is $179,541.50.

Support is traditionally awarded based upon the parties' monthly net income and it is usually calculated using at least a six-month average of earnings. *See* Pa.R.C.P. 1910.16-2. The Hearing Officer found documentation of Mother's actual monthly net earnings in 2018 and 2019 to be lacking. He faulted Mother for obtaining an extension for the filing of her 2018 federal income tax return, as it raised a question in his mind whether the return was "simply not filed in order to limit the evidence available as of the date of the hearing." Findings of Fact, Conclusions of Law, and Recommendations of the Hearing Officer, 7/3/19, at 4. At the same time, however, the Hearing Officer acknowledged that there was evidence introduced of Mother's 2017 and 2018 actual earnings.[4] Although Mother

_____

[4] The Hearing Officer made a point of noting that Father, not Mother, introduced Mother's 2017 Federal Income Tax Return. We do not believe that this fact indicates any intention on Mother's part to withhold or conceal information. The record reveals that Father testified first and offered Mother's return, as well as the corporation's 2018 corporate tax return, both of which were provided to him in discovery pursuant to court order.

testified that she had $0 in earnings for the first five months of 2019, and introduced a letter from the network confirming that there was no filming in 2019, the Hearing Officer found that Mother did not offer sufficient documentation to permit the calculation of her actual earnings in 2019. Thus, he assigned to Mother an earning capacity for 2019, which he calculated "[a]s the average of her income from 2017 and 2018," ostensibly because there was no evidence of Mother's earnings in the years prior to 2017. *Id*. The trial court adopted the Hearing Officer's findings and recommendations.

Mother claims that the trial court erred in assigning her an earning capacity of almost $180,000 in 2019 in the face of "clear, unambiguous and uncontradicted documentation" of her actual earnings. Mother's brief at 38. Furthermore, she contends it was inequitable for the court to assign to her an earning capacity equal to the income she earned while she and the children were filming and producing television shows. *Id*. at 36. An earning capacity of $179,541.40 was not realistic according to Mother, when she and the children could not film and were prohibited from obtaining other acting work under the terms of the contract. *Id*. at 37.

We find there was documentary evidence of Mother's actual monthly net earnings in 2017 and 2018 and early 2019. Mother's 2017 federal income tax return, as well as the 2018 tax return for her Subchapter "S" corporation were introduced into evidence. Additionally, Mother's accountant supplied documents confirming the payments made to Mother through the corporation

in 2018. Mother also introduced documentation of the expenses related to the health insurance she maintains for all of the children. These documents were admitted without objection. In fact, Mother's actual earnings in 2018 were ascertained by the Hearing Officer from the 2018 corporate tax return and the accountant's letter.

With regard to 2019, Mother offered the following. She was under an exclusive contract with one network. The contract was identified as Exhibit F-7, used by Father for purposes of cross-examination, and provided to the Hearing Officer for *in camera* review. **See** N.T. Support Hearing, 5/28/19, at 44. Mother testified that she had no income to date in 2019, and offered documentation from the television network confirming that they were not filming and, therefore, not paying Mother.

Mother also offered the following additional explanation for her lack of earnings in 2019. In 2018, Father sought a court order to halt filming of the show. Mother filed an expedited petition for emergency relief seeking an order that filming could resume. Although she ultimately prevailed, and her attorney advised the network that production could resume, the media company had not yet approached Mother's attorney about production. **Id**. at 48. Mother testified that it was unclear whether filming of the show involving the children would ever resume. **Id**. at 49. When she was asked whether she was entitled to compensation when old shows were aired, she explained that there are no royalties paid for reality television shows and that she does not

receive extra compensation for personal appearances per the contract. *Id*. at 50.

Mother also recounted how she appeared in a new show with the network focused on her social life post-divorce. She explained that she did not receive income for that show. Rather, the new show was a means to offset the compensation that had already been paid, but not earned, for episodes of the long-running show with the children that were not filmed as a result of Father's litigation. It was her testimony that she still "owed" the network $40,000. As of the date of the hearing, Mother maintained that she had $0 in income for the first five months of 2019, was not currently earning any income from the network, and had no assurances that filming would ever resume on either show.[5]

Despite the foregoing, the trial court concluded that Mother supplied no documentation from which her actual earnings could be determined for purposes of establishing her support obligation in 2019. The trial court noted that although Mother testified as to her income for the relevant period, "the Support Hearing Officer frequently determined her to lack credibility, which is further compounded by an often-noted lack of supporting documentation." Trial Court Order and Decision, 12/3/19, at 9. The court thus deferred to "the

---

[5] Mother testified that she was supporting the children during 2019 by borrowing from the corporation and the children's trusts. The Hearing Officer did not credit Mother's account because she did not submit any documentation evidencing the loans or payments made on the loans.

Hearing Officer's determination that Mother's testimony regarding her income lacked credibility" and supporting documentation. *Id*. at 10.

After reviewing the evidence of record, we find inadequate support for the trial court's finding that a lack of documentation hindered an evaluation of Mother's actual earnings in 2018 and 2019. There was documentary evidence of Mother's actual earnings in 2017, 2018, and written confirmation from the network that Mother had not received any compensation in 2019 as of the date of the May hearing. It is unclear what additional documentation would have been available or deemed satisfactory to confirm Mother's $0 in actual earnings at that juncture. Mother also provided testimony that she had $0 in income for the first five months of 2019 due to a change in circumstances. The Hearing Officer did not make a specific finding that her testimony in this regard was not credible.

Furthermore, the trial court abused its discretion when it concluded that the Hearing Officer correctly determined Mother's imputed income in accordance with Pa.R.C.P. 1910.16-2(d)(4)(providing that if the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, an income equal to the party's earning capacity may be imputed). *See* Trial Court Order and Decision, 12/3/19, at 10. The court did not articulate reasons why it was necessary to resort to an income capacity determination pursuant to Pa.R.C.P. 1910.16-2(d)(4). Furthermore, by assigning to Mother an earning capacity in 2019 equal to the

average of her earnings in 2017 and 2018, the trial court did not consider all relevant factors such as Mother's "[a]ge, education, training, health, work experience, earnings history and child care responsibilities." Pa.R.C.P. 1910.16-2(d)(4).[6]

Mother's employment situation is far from typical. Her continued ability to support her children on earnings derived from a reality television show is not only dependent upon the vagaries of ratings and the whims of television executives, but Father's cooperation as well. Moreover, although the show involving the children has aired for fifteen years, its continued viability may be short-lived. Two of the children have reached the age of majority, and the remainder are on the cusp of that milestone. It remains to be seen whether Mother can successfully parlay her notoriety from that television show into another lucrative entertainment vehicle. As of the support hearing, it was unclear whether Mother's foray into a show that focused primarily on her life, rather than the lives of the children, would be successful. In any event, there was evidence adduced that, commencing in 2019, Mother may not have the same ability going forward to support the six minor children with earnings from reality television.[7]

_____

[6] At the January 16, 2020 hearing on, *inter alia*, Mother's exceptions, counsel for Mother represented that the contracts were not being renewed by the network. **See** N.T. Hearing, 1/16/20, at 3.

[7] There is evidence in the record that Mother is a registered nurse, although she has not worked in that field for the last fifteen years.

For the foregoing reasons, we vacate that portion of the trial court's order adopting the Hearing Officer's recommendation that Mother's child support obligation commencing January 2019 be based on an earning capacity derived by averaging Mother's 2017 and 2018 income. We remand for the calculation of Mother's actual net monthly earnings for 2019. In the event that Mother's 2019 actual net monthly earnings are greatly reduced or $0, as Mother maintains, the trial court should determine whether it is appropriate to assign an earning capacity to Mother, and if so, assess Mother's earning capacity based on the factors outlined in Pa.R.C.P. 1910.16-2(d)(4). In all other respects, we affirm.

Order affirmed in part, vacated in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/18/2021